## Commonwealth *v.* Mathews.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 24, 1947:.

Will Mathews, the petitioner, was found guilty of murder in the first degree in the Court of Oyer and Terminer of Allegheny County. On January 19, 1926, he was sentenced to life imprisonment in the Western State Penitentiary. He now petitions for a writ of coram nobis residet. He claims his conviction was "not based upon bona fide evidence" and that "the quality and quantity of the evidence against him was such that he should have been acquitted, that no motive was shown for the commission of the crime". He also files a statement sworn to before a Notary Public of Arthur R. Carson, who is also serving a life sentence in the Western State Penitentiary for the fatal shooting of Joseph Smith on September 17, 1925, in Judy's Hotel, Homestead, Pa. It was this Joseph Smith whom the petitioner was convicted of murdering. Carson, in his statement, declares that Mathews is innocent of any participation in the crime of killing Joseph Smith, that he previously made a statement implicating Mathews as an accomplice only after being coerced and while under duress.

The petitioner does not make out a case entitling him to a writ of error coram nobis. The principles controlling the issuance of such a writ are set forth in the opinion we filed on March 19, 1945, in the case of *Commonwealth v. Harris*, 351 Pa. 325, 41 A. 2d 688. We there said: "The writ of error coram nobis is not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication, made while some fact existed which if before the court would have prevented the rendition of the judg-

ment, and which without any fault or negligence of the party was not presented to the court." The writ is not issued simply because later some witness offers to change or recant the testimony which he gave on the trial which resulted in the conviction of the petitioner. There would be no finality to any conviction of crime if verdicts and judgments could be thus easily nullified.

Since the Act of April 22, 1903, P. L. 245, 19 PS 861 there is no justification for invoking the writ of error coram nobis in any case in which a defendant is convicted of murder in the first degree. See footnote 7, at p. 342, of our opinion in the *Harris* case, supra. Section 1 of the Act of 1903 provides that: "Whenever by petition, supported by after discovered evidence, it shall be made to appear to the Supreme Court that there is ground for substantial doubt as to the guilt of any prisoner convicted of murder of the first degree, the said court shall have power to authorize the court of oyer and terminer in which such prisoner has been convicted to grant a rule for new trial, nunc pro tunc, notwithstanding the expiration of term in which such prisoner was convicted and sentenced; and thereupon the said court of oyer and terminer may, in its discretion, grant and proceed to hear such rule, as in other cases." The petition now before us for a writ of error coram nobis presents no case either for the writ asked for or for the exercise of the authority given this court by the Act of 1903.

It is not necessary to discuss all the averments of the petition now before us. They are manifestly inadequate to move any court to issue the extraordinary writ asked for. The essence of the petition is that Mathews was not properly convicted of the crime for which he has been serving a sentence for a score of years. If the evidence against him did not justify his conviction, the Board of Pardons is the proper tribunal for him to appeal to. If after discovered evidence cast substantial doubt on his guilt, he can proceed under the Act of 1903.

The presumption is that the petitioner had a fair trial and was justly convicted and sentenced. Nothing in his petition disturbs this presumption.

The petition is dismissed.