## Commonwealth ex rel. Harris v. Burke, Warden

*H. L. Maris,* for petitioner.

*Richardson Dilworth,* district attorney; *Michael von Moschzisker,* first assistant district attorney; *Samuel Dash,* for Commonwealth.

BROWN, JR., P. J., September 17, 1952.—This is a petition for writ of habeas corpus. Relator, Frank Harris, was indicted for murder, April Sessions, 1926, No. 944. On his affidavit of destitute circumstances, counsel were appointed by the court on April 29, 1926. The trial on September 21, 22 and 23, 1926, resulted in a verdict of guilty of murder in the first degree with the penalty fixed at life imprisonment. The jury was polled, and each juror announced his verdict as guilty of murder in the first degree with the penalty of life imprisonment; the verdict was so recorded by direction of the trial judge. A motion for a new trial was overruled, and on October 1, 1926, he was sentenced to the Eastern State Penitentiary in accordance with the jury's verdict. No appeal was taken.

It appears from the record that on March 4, 1926, at about 2 A. M., Harris and a companion Wilbert McQueen, while walking north on 10th Street, above Lombard Street, Philadelphia, were accosted by two policemen. Harris and McQueen drew their revolvers, and shots were exchanged by Harris and the two officers. No shots were fired by McQueen, who was killed in the shooting. Harris and the two officers each had

.38 caliber weapons. The fatal bullet was a .38 caliber full metal patch bullet, that is, a bullet having a metal alloy jacket casing over the lead bullet core. At the trial, Harris testified that his cartridges were soft lead bullets, and that cartridges of the type extracted from the victim were too long to fit in the chamber of his revolver; that it was impossible to close his revolver into firing position with such a cartridge. The live cartridges from Harris' weapon were not produced at the trial; and it was not physically demonstrated that metal patch bullets would not fit in the chamber of his revolver. There was no expert testimony on the subject; a ballistics expert was not employed by the City of Philadelphia until 1930, four years after the trial. The trial judge left this factual issue to the jury in a clear and unequivocal charge, stating, inter alia: "Whose bullet was it that inflicted the fatal wound upon McQueen? That is the fundamental question in the case. If to that question you say it was not shot by the defendant, then the defendant must be acquitted. If that bullet was shot by anybody else, by either of the others of whose shooting we have evidence, then your verdict as to the indictment before you must be not guilty." The jury chose to disbelieve defendant and found him guilty.

In 1947, when application was made to the Board of Pardons, the assistant district attorney was instructed by the Board to investigate whether the fatal bullet could have been fired from the revolver taken from Harris. The report of the Philadelphia Police Department ballistics expert was that, in his opinion, the fatal bullet could not have been fired from Harris' revolver. Partly on the basis of this report, the Pardon Board recommended that his sentence be commuted, and on July 25, 1947, he was paroled. Subsequently, on January 17, 1951, he was recommitted to the Eastern State Penitentiary for violation of his parole after

serving one year in the Philadelphia County Prison upon his conviction of assault and battery and carrying a concealed deadly weapon. In 1951, application was again made to the Board of Pardons, but this was refused, the Board instructing Harris' counsel to present the matter to the court. This petition for a writ of habeas corpus followed.

"The office of the writ [of habeas corpus] is not to determine the guilt or innocence of a prisoner, but only to ascertain whether he is restrained of his liberty by due process of law. In short, the primary, if not the only, object of habeas corpus is to determine the legality of the restraint under which a person is held." 25 Am. Jur., Habeas Corpus §2. Such a writ is the proper remedy when a person is unlawfully detained in prison, as where the order affecting the prisoner is beyond the power or jurisdiction of the court entering it, or where the confinement is under a void or illegal sentence. *Commonwealth ex rel. v. Keeper*, 295 Pa. 252, 253; *Commonwealth v. Curry*, 285 Pa. 289, 292; *Commonwealth ex rel. Wilhelm v. Morgan*, 278 Pa. 395, 396. The writ lies for an original lack or a coincident loss of the sentencing court's jurisdiction, and also, of course, for a denial of constitutional due process. *Commonwealth ex rel. Townsend v. Burke*, 361 Pa. 35, 41; *Commonwealth ex rel. Sheeler v. Burke*, 367 Pa. 152, 157-158. On the other hand, relief cannot be obtained by a writ of habeas corpus for errors alleged to have occurred in the course of the trial, nor can it be invoked to question the sufficiency or insufficiency of the evidence to sustain a conviction. *Commonwealth ex rel. Marelia v. Burke*, 366 Pa. 124, 126-127. Questions concerning the propriety of the verdict are matters for appeal, and not ground for discharge on habeas corpus. *Commonwealth ex rel. Baxter v. Ashe*, 368 Pa. 629, 630. The writ does not lie to review questions of guilt or innocence, or mat-

ters which should have been interposed by way of defense. *Commonwealth ex rel. Bandi v. Ashe*, 367 Pa. 234, 239; *Commonwealth ex rel. Spencer v. Ashe*, 364 Pa. 442, 445-447. "The writ can issue only where the application contains allegations which, *if true*, shows his illegal detention." *Commonwealth ex rel. Milewski v. Ashe*, 362 Pa. 48, 50.

Accordingly, the questions involved in the present proceeding for a writ of habeas corpus are not whether relator was guilty or innocent of the murder charged against him, or whether the evidence was sufficient or insufficient to sustain his conviction, but whether he is unlawfully detained in prison by reason of the court's lack of original or coincident loss of jurisdiction, or by a void or illegal sentence, or by a denial of constitutional due process. It is clear that relator was convicted and sentenced under due process of law. The court had jurisdiction, and relator was represented by competent counsel, and had a fair and impartial trial before an able and just judge. Consequently, the imprisonment under which he is held is lawful, and he is not entitled to be discharged or released from prison by means of a writ of habeas corpus.

It is to be noted in passing that while the learned trial judge emphasized in his charge that the jury must find that relator shot the fatal bullet in order to render a verdict of guilty, it may well be that even if the fatal bullet had been fired by one of the police officers, relator could still be found guilty of murder of the first degree. When he shot at the officers, it was foreseeable that the officers would return the fire, and if it be found that he shot with intent to kill, this act might be deemed, within the meaning of the law, the cause of the death of anyone killed by the officers' fire. See *Commonwealth v. Almeida*, 362 Pa. 596, 603, et seq., for an exhaustive discussion of this subject. On

this premise, relator's discharge on habeas corpus would not be justified.

It does not follow that relator is without remedy. A petition for a new trial, nunc pro tunc, notwithstanding the expiration of the term in which he was convicted and sentenced, may be presented to the Supreme Court under the Act of April 22, 1903, P. L. 245, 19 PS §861-863. The basis of such a proceeding is "after discovered evidence", and it must appear that "there is substantial doubt as to the guilt of" the prisoner. The testimony of the ballistics expert might well be regarded as evidence "such as could not have been obtained at the trial by the exercise of reasonable diligence", or which was "sufficient to require another trial for the reason it was [not] easily obtainable * * * at the time of the trial." *Commonwealth v. Sykes*, 353 Pa. 392, 400; *Commonwealth v. Fragassa*, 278 Pa. 1, 7. It is to be noted that "no comparison is to be drawn between * * * application for habeas corpus and the extraordinary remedy of a motion for a new trial" under the Act of 1903. *Commonwealth ex rel. Sheeler v. Burke*, supra, 157.

A writ of error coram nobis lies in the court of oyer and terminer, wherein relator was convicted and sentenced, to set aside, nullify or reform a judgment "where facts exist extrinsic of the record, unknown and unknowable by the exercise of diligence at the time of its rendition, and which would, if known, have prevented the judgment either in its entirety or in the form in which it was rendered", or "to recall some adjudication, made while some fact existed which if before the court would have prevented the rendition of the judgment, and which without any fault or negligence * * * was not presented to the court." *Commonwealth v. Harris*, 351 Pa. 325, 327, 330. Considering the requirements of the Act of 1903 that the motion for a new trial must be supported "by after discovered

evidence" and that it must appear that "there is substantial doubt as to the guilt" of the prisoner, it might be that the facts in some cases of first degree murder would not justify the granting of a new trial under that Act, yet would warrant the granting of a writ of error coram nobis under the rules or principles set forth in *Commonwealth v. Harris,* supra. It was said, however, in footnote 7, at p. 342, of the opinion in that case, that "there is no necessity for granting a writ of error coram nobis in a case of first degree murder. The Act of 1903 furnishes an adequate remedy for a prisoner convicted of that degree of murder and concerning whose guilt evidence discovered after the expiration of the term at which he was convicted creates a substantial doubt." In *Commonwealth v. Mathews,* 356 Pa. 100, 102, it was stated: "Since the Act of April 22, 1903, * * * there is no justification for invoking the writ of error coram nobis in any case in which a defendant is convicted of murder in the first degree."

Also, relator may renew his application to the Board of Pardons. In *Commonwealth v. Mathews,* supra, where "the essence of the petition" for a writ of error coram nobis was that the defendant "was not properly convicted of the crime for which he has been serving a sentence for a score of years", it was pointed out (pp. 102-103) : "If the evidence against him did not justify his conviction, the Board of Pardons is the proper tribunal for him to appeal to. If after discovered evidence cast substantial doubt on his guilt, he can proceed under the Act of 1903. The presumption is that the petitioner had a fair trial and was justly convicted and sentenced." There is no doubt that the present relator had "a fair trial and was justly convicted and sentenced" under the evidence then presented. It appears, however, that the testimony of the ballistics expert obtained over twenty years after the trial presents a situation to be resolved

either by the Supreme Court and the Court of Oyer and Terminer in a proceeding under the Act of 1903, or by the Board of Pardons, and not by the Common Pleas under a writ of habeas corpus.

Therefore, the petition for a writ of habeas corpus is dismissed; the rule to show cause allowed thereon is discharged, and the relator is remanded.