Commonwealth ex rel. Harris, Appellant, *v.* Burke.

44

Argued April 20, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ. Appeal, No. 120,

*Herbert L. Maris,* for appellant.

*Samuel Dash,* Assistant District Attorney, with him *Martin Vinikoor,* Assistant District Attorney, *Michael von Moschzisker,* First Assistant District Attorney and *Richardson Dilworth,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 27, 1953:

The facts presented by relator on this appeal would seem reasonably to justify his claim that he is entitled to some relief, but he has mistaken his remedy.

At about 2:00 A.M. on March 4, 1926, relator and a companion, one McQueen, were walking north on Tenth Street above Lombard Street, in Philadelphia. They were accosted by two policemen. Relator and McQueen drew their revolvers, and shots were exchanged by relator and the two officers but not by McQueen. McQueen was killed by a bullet from the revolver of one of the parties. Relator and the officers all had .38 caliber weapons. The fatal bullet was a .38 caliber full metal patch bullet, that is, one having a metal alloy jacket casing over the lead bullet core. At relator's trial he testified that his cartridges were soft lead bullets, and that cartridges of the type extracted from

the body of McQueen were too long to fit in the chamber of his revolver,—that it was impossible to close his revolver into firing position with such a cartridge. The live cartridges from relator's weapon were not produced at the trial and no attempt was made to demonstrate physically that metal patch bullets would not fit in the chamber of his revolver. The trial judge left to the jury the factual issue as to whose bullet it was that inflicted the fatal wound upon McQueen, and instructed them that the defendant must be acquitted if it was not he who shot McQueen. This obviously was a correct statement, at least as far as murder in the first degree was concerned, inasmuch as there was no claim on the part of the Commonwealth that at the time of the shooting relator and McQueen were, or had been, engaged in the commission of any of the felonies enumerated in the criminal code as bearing on the question of first degree murder. The jury found relator guilty of murder in the first degree with penalty of life imprisonment. His motion for a new trial was overruled and he was sentenced to the Eastern State Penitentiary in accordance with the jury's verdict. No appeal was taken.

Twenty-one years later, in 1947, relator applied to the Board of Pardons for commutation of his sentence. His petition was based on the alleged impossibility of his having fired the fatal shot because, as he claimed, the bullet that killed McQueen was a special metal jacketed one, 1-9/16″ in overall length, and therefore could not have been used in or fired from his revolver which could not chamber a cartridge more than 1-3/16″ overall. The Board of Pardons instructed an Assistant District Attorney to investigate this contention and the question was referred by the District Attorney's office to a ballistic expert of the Philadelphia Police Department. There had not been any such expert in the department prior to 1930. The ballistic expert apparently

reported that the fatal bullet could not have been fired from relator's revolver. The Assistant District Attorney forwarded the report to the Board of Pardons, which thereupon granted commutation of relator's sentence and released him on life parole. Three years later, in 1950, he was convicted of the offense of assault and battery and sentenced to one year imprisonment in the county prison. After serving that sentence, he was re-committed, in 1951, to the Eastern State Penitentiary for life as parole violator, where he is now confined. He again made application to the Board of Pardons for re-parole, but his petition was refused. Thereupon he filed in the court below a petition for a writ of habeas corpus, which the court dismissed. He now appeals from that dismissal.

It should be immediately obvious that a writ of habeas corpus is not an appropriate remedy whereby to furnish to the relator any relief to which he may be entitled under the facts and circumstances above set forth. Such a writ is not, as this court has frequently pointed out, a substitute for a motion for a new trial or for an appeal or for a writ of error: *Commonwealth ex rel. Marelia v. Burke,* 366 Pa. 124, 126, 75 A. 2d 593, 594, and numerous cases there cited, to which may be added *Commonwealth ex rel. Carey v. Montgomery County Prison Keeper,* 370 Pa. 604, 606, 88 A. 2d 904; 905; *Commonwealth ex rel. Geiger v. Burke,* 371 Pa. 230, 89 A. 2d 495. As the court below properly said: "It is clear that relator was convicted and sentenced under due process of law. The court had jurisdiction, and relator was represented by competent counsel, and had a fair and impartial trial before an able and just judge. Consequently, the imprisonment under which he is held is lawful, and he is not entitled to be discharged or released from prison by means of a writ of habeas corpus." The fundamental issue in relator's trial was whether or not it was a bullet from his

revolver that killed McQueen; testimony was presented for the determination of that question and the jury passed upon it as an issue of fact. It is not claimed, as it was in *United States ex rel. Almeida v. Baldi,* 195 F. 2d 815, that the Commonwealth deliberately suppressed any evidence in its possession.

What we really have here is what may fairly be regarded as after-discovered evidence of vital import; it was not, and could not have been, produced at relator's trial. Under such circumstances he can pursue one of two remedies. He may institute proceedings under the Act of April 22, 1903, P. L. 245, which provides that the Supreme Court may, in such a case as this, authorize the court of oyer and terminer to grant a rule for new trial nunc pro tunc; if that court shall not deem the grounds sufficient it shall refuse a new trial and the proceedings shall terminate; if, on the other hand, it be of opinion that, of right and justice, a new trial should be granted, and if the Supreme Court on appeal concurs with that opinion, a new trial shall be had as if it had been granted in due course following the conviction.* Although relator argues that the Commonwealth itself admits, or has absolutely proved, that he is not guilty, this is not true. The testimony of the ballistic expert must necessarily be a question for the jury if a new trial is to be had. However, there is obviously another door open to relator, namely, to request the Board of Pardons to recommend to the Governor that he exercise his power to grant a pardon. To that end the Board has full power to exercise its own judgment in view of the circumstances

---

* Since the passage of the Act of 1903 there is no justification for invoking the writ of error coram nobis in any case in which a defendant has been convicted of murder in the first degree: *Commonwealth v. Harris,* 351 Pa. 325, 342, footnote 7, 41 A. 2d 688, 697; *Commonwealth v. Mathews,* 356 Pa. 100, 102, 51 A. 2d 609, 610.

featuring this case and apart from any legal necessity of requiring factual proofs.

The order of the court below dismissing relator's petition for a writ of habeas corpus is affirmed.

