Commonwealth *v.* Markle, Appellant.

Argued September 30, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Edward J. Steiner,* for appellant.

*Harry A. Heilman, Jr.,* District Attorney, with him *James D. McClister,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE BELL, November 10, 1958: John Clarence Markle, Jr. pleaded guilty to an in-

dictment charging him with the murder of his wife. The trial judges after hearing evidence on behalf of the Commonwealth and the defendant, pursuant to the Act of 1939, P. L. 872, Section 701, 18 PS §4701 adjudged him guilty of murder in the first degree and fixed the penalty at life imprisonment. Markle has appealed contending that the degree of guilt could not under the evidence rise to a higher degree than second degree murder. The judgment and sentence imposed by the court below must be affirmed.

Markle, 39 years of age, shortly after 11:00 P.M. on February 7, 1958 returned to his home after having consumed (according to his testimony) eight to twelve glasses of beer. There was no evidence or even a contention that he was drunk or intoxicated. He entered the front door of his home and walked into the living room where his wife, Ruth Markle, aged 37 years, was watching television. According to his son Jack Markle, aged 15 years, he walked over to his wife's chair and picked up a cup of coffee which was on the arm of the chair. His wife grabbed back the cup and the coffee spilled on the floor.*

Mrs. Markle then said to the appellant, "I thought you were going to leave" and he replied, "I am", and went upstairs.

Jack Markle heard his father open a drawer in an upstairs bedroom and fumble with some shotgun shells. Markle then got a 12 gauge Stevens shotgun from a closet. He came downstairs. His son Jack had gone into the other half of the double house to tell the owner, Charles Leidy, that his father was going to shoot his mother. Within a minute a shot rang out and Leidy went to see what had happened. Markle

---

* Markle testified that he tried to put his arm around his wife and she shoved him away.

met him in the common hallway (used by both families) and shoved the shotgun muzzle into Leidy's abdomen and said: "You get the hell over there where you belong. I just shot and killed Ruth." Leidy went back to his apartment and tried to call a doctor. Another shot rang out and then Markle entered the Leidy living room and handed the shotgun and four unused shells to Leidy and again said, "I just shot and killed Ruth."

Mrs. Markle was shot with two "pumpkin ball" shells, one of which penetrated the left side of her body slightly below the left breast and toward the heart; and the other penetrated her body on the right upper arm and shattered a portion of her left hand between the index finger and thumb. Mrs. Markle died almost immediately as a result of the gunshot wounds.

A plea of guilty to a charge of murder is not a plea of guilty of murder in the first degree. It is merely a plea of guilty of murder generally, and only establishes the felonious killing as murder in the second degree. In order to raise the degree, the burden is upon the Commonwealth to establish the essential elements of first degree murder—in this case a wilful, deliberate and premeditated killing, which requires, inter alia, a specific intent to take human life: *Commonwealth v. Jones*, 355 Pa. 522, 50 A. 2d 317; *Commonwealth v. Iacobino*, 319 Pa. 65, 178 A. 823; *Commonwealth v. Chapman*, 359 Pa. 164, 58 A. 2d 433. The jury, or in this case the trial judges, could properly find a specific intent to kill, and therefore first degree murder, from Markle's deliberate use of a deadly weapon upon a vital part of his wife's body: *Commonwealth v. Ballem*, 386 Pa. 20, 123 A. 2d 728; *Commonwealth v. Jones*, 355 Pa. 522, supra; *Commonwealth v. Heller*, 369 Pa. 457, 87 A. 2d 287; *Commonwealth v. Iacobino*, 319 Pa. 65, supra. Unquestionably all the necessary ingredients

of first degree murder were proved by the Commonwealth: *Commonwealth v. Ballem*, 386 Pa. 20, supra; *Commonwealth v. Jones*, 355 Pa. 522, supra.

Markle contends that his mind was so disordered and confused that he could not have formed the specific intent to kill his wife. There is evidence indicating that appellant is emotionally and psychologically unstable. There is no contention or evidence of insanity. While we agree with the contention that appellant is not a normal man* we cannot agree that the appellant did not know what he was doing and thus had no specific intent to kill his wife.

It is undisputed that immediately after the first shot, and again after the second shot, appellant told Leidy that he had shot and killed his wife. He told James Barger, a State Policeman, less than two hours after the killing, that he fired the second shot to stop his wife from screaming and moaning. Moreover he told Gus Zanos, the arresting officer, less than thirty minutes after the killing that he had killed his wife and that he, "would do it again if [he] had to." Less than two hours after the killing, in response to a question of Constable Roy Bruner, he said it was none of Bruner's business why he had killed his wife. He also told Bruner, "It is me [Markle] that is going to get the hotseat." Finally in his written statement given less than seven hours after the killing, he stated that he remembered getting the gun and shooting his wife.

A reading of the record indicates that John Markle, an emotionally unstable man, enraged by a slight scuffle with his wife, deliberately shot and intentionally killed her while fully conscious of his acts.

---

* It does not require any knowledge of medicine or psychiatry to conclude that a man who shoots his wife on such slight provocation is not normal.

Markle contends that this killing could not rise higher than murder in the second degree because he had a life-long history of emotional instability; he was a heavy drinker; he was discharged from the Army because of psychoneurosis; he is a constitutional psychopath; from earliest childhood, he was never able to get along with his family; he severely bumped his head during childhood (as does every American boy); he attended twenty-seven different schools in eight years and could not finish the Eighth grade; he married a girl who was only fourteen years old; he struck his wife several times; he had great difficulty in keeping a job and changed jobs frequently. Assuming that all of this is both accurate and true, it would not be legally sufficient to justify a finding by the trial judges of second degree murder. A fortiori it is not legally sufficient to warrant a finding by this Court of abuse of discretion, or error of law, or any error that would justify a reduction of the crime to second degree murder. Cf. *Commonwealth v. Phillips*, 372 Pa. 223, 228, 229, 93 A. 2d 455.

Judgment and sentence affirmed.