UNITED STATES of America ex rel. Jeddy WILKINS, Appellant,

v.

William J. BANMILLER, Warden Eastern State Penitentiary, Philadelphia, Pa.

No. 14095.

United States Court of Appeals Third Circuit.

Argued Feb. 7, 1963.

Decided June 27, 1963.

Rehearing Denied Dec. 10, 1963.

Biggs, Chief Judge, and McLaughlin and Ganey, Circuit Judges, dissented from refusal to grant a rehearing en banc.

Mary Alice Duffy, Philadelphia, Pa., for appellant.

Stanley Schwarz, Asst. Dist. Atty., Philadelphia, Pa. (Arthur J. Marion, Asst. Dist. Atty., Arlen Specter, Asst. Dist. Atty., Chief, Appeals Division, James C. Crumlish, Jr., Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before KALODNER, STALEY and SMITH, Circuit Judges.

KALODNER, Circuit Judge.

This appeal is from the District Court's denial of the relator's petition for a writ of habeas corpus. It is premised on the contention that the District Court erred when, following its fact-finding that relator had been induced to plead guilty to a murder indictment in a Pennsylvania state court by the duplicitous conduct and fraudulent misrepresentations of his privately-retained attorney, it denied habeas corpus relief on the ground that neither the state court nor the prosecutor had any knowledge, or was put to notice, of the situation and "intervention by this court requires that the denial of relator's

rights be the doing of the state." 205 F.Supp. 123, 128 (E.D.Pa.1962).

Relator specifically urges that he was, by his attorney's misconduct, deprived of due process of law under the Fourteenth Amendment, and the "assistance of counsel" under the Sixth Amendment; that an attorney is "an officer of the court which admitted him to practice and a part of the judicial branch of the state and as such an agent of the state," and accordingly his attorney's actions were state actions. With respect to the latter contention we must immediately note that we held in United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, 426 (1953), cert. den. Maroney v. United States ex rel. Darcy, 346 U.S. 865, 74 S.Ct. 103, 98 L.Ed. 375 (1953) that "When counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state."

Relevant to our disposition are these undisputed facts:

On March 2, 1950, the relator entered a plea of guilty generally in Court of Common Pleas No. 5, Philadelphia, Pennsylvania, to a murder indictment, in 1948, charging him with killing Theodore Rice on Christmas Day, 1947; he was found guilty of murder of the first degree and sentenced to life imprisonment; no appeal was ever taken from the Court's finding or sentence; almost 10 years later, on November 18, 1959, relator filed a petition for a writ of habeas corpus in Common Pleas Court No. 5 which alleged that (1) he had been deprived of the due process guaranteed him under the Fourteenth Amendment by reason of the conduct of his privately-retained attorney, Herbert G. Hardin, and (2) the evidence was insufficient to sustain a finding of first degree murder; the petition was denied without hearing; the Pennsylvania Supreme Court affirmed, Commonwealth ex rel. Wilkins v. Banmiller, 401 Pa. 347, 164 A.2d 333 (1960), cert. den. Wilkins v. Banmiller, 364 U.S. 944, 81 S.Ct. 464, 5 L.Ed.2d 374 (1961), on the ground that "the writ [habeas corpus] may not be used as a substitute for an appeal"; on February 27, 1961, relator filed the instant petition for habeas corpus relief in the District Court, alleging, inter alia, that "through deceit and false promise" he had been "tricked and coerced" by Hardin into pleading guilty by the latter's assurances that he had "made an arrangement with the District Attorney's office and the Court that a light sentence would be imposed", and the untrue statement by Hardin that he had interviewed prosecution witnesses and that their stories would send the relator to the electric chair; the petition further averred that a member of the sentencing court had by his questioning "overreached" the relator.

Hearing on the petition was had before the District Court of November 21, 1961. At that time two of the prosecution witnesses, one Louise McCarter and the other Charles J. Hodge, testified that they had not witnessed the shooting and that they had never been interviewed by Hardin; the relator testified that on the evening of December 25, 1947 he and his half-brother, Leroy, and his cousin, Wiley Cotton, were in a taproom when Cotton became involved in an argument with the deceased Rice, because of attentions which Cotton paid to Louise, Rice's girl; that because he was concerned that his brother might be shot by Rice, he took a loaded revolver from his overcoat pocket, and at that juncture, Cotton, running backward", backed into him and the revolver was fired; that he never intended to shoot Rice; that he was induced to plead guilty by Hardin's assurances he had arranged with the Court and the State prosecutor for a "light sentence" and Hardin's statements that he had interviewed the prosecution witnesses and their testimony would send the relator "to the electric chair"; Leroy Wilkins testified as to the argument in the taproom; also, that on the day the relator pleaded guilty, and before he did so, Hardin told him that he had talked with Louise McCarter and Hodge and their statements would give the relator "the chair or life" and that Hardin had asked the relator to plead guilty and ac-

cept his assurances that "he would get him a light sentence." Neither Hardin nor Cotton testified.

The District Court "accept[ed] relator's version" that he had been induced to plead guilty by "the deliberate misrepresentation by the attorney [Hardin] of the prospective testimony of certain witnesses." It also found that Hardin had misrepresented to the relator that he had "arranged" a light sentence with the Court and prosecutor, but ruled that such misrepresentation was not of "constitutional dimensions". It held, however, as earlier stated, that Hardin's misrepresentation did not warrant granting of habeas corpus relief because state action was not involved. The District Court further held that the relator had "failed to exhaust available state remedies within the meaning of § 2254" with respect to its complaint of "overreaching techniques" on the part of the late Judge Kun, one of the three trial judges, and that consequently the writ would be denied "as to this ground."

■ The complaint of "overreaching techniques" is based on the following colloquy between Judge Kun and the relator, which followed relator's guilty plea and his testimony that the shooting was accidental:

"Judge Kun: You had the gun and you pulled the trigger.

"The Defendant: I pulled the gun out and he [Cotton] hit my arm.

"Judge Kun: You also pulled the trigger. That is more than having a gun."

The following statement in relator's brief completely disposes of his complaint that he was "overreached" inasmuch as it establishes that Judge Kun's questions

did not cause him to change his testimony that the shooting was accidental:

"However, despite Judge Kun's over-reaching techniques, the defendant continued to deny that he pulled the trigger * * *"

■ We do not reach the critical issue presented here for the reason that there is available to the relator a remedy in the Pennsylvania courts—either via the Pennsylvania Act of April 22, 1903, P.L. 245 § 1, 19 P.S. § 861, or the writ of error *coram nobis*, and it is settled that the federal writ of habeas corpus "shall not be granted", 28 U.S.C.A. § 2254, in cases of presently available state remedies", Fay v. Noia, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963),[1] citing Brown v. Allen, 344 U.S. 443, p. 447, 73 S.Ct. 397, p. 402, 97 L.Ed. 469 (1953), where it was held:

"It is to be noted that an applicant is barred unless he has 'exhausted the remedies available in the courts of the State * * * by any available procedure.' "

The Act of 1903 provides that:

"Whenever by petition, supported by after discovered evidence, it shall be made to appear to the supreme court that there is ground for substantial doubt as to the guilt of any prisoner convicted of murder of the first degree, the said court shall have power to authorize the court of oyer and terminer in which such prisoner has been convicted to grant a rule for new trial, nunc pro tunc, notwithstanding the expiration of term in which such prisoner was convicted and sentenced; and thereupon the said court of oyer and terminer may, in its discretion, grant and proceed to hear such rule, as in other cases."

1. In Fay v. Noia it was said, 372 U.S. at p. 435, 83 S.Ct. at p. 847:
"We hold that § 2254 is limited in its application to failure to exhaust state remedies *still open* to the habeas applicant at the time he files his application in federal court. 43"

Note 43, page 435, of 372 U.S., 83 S.Ct. page 847, reads:
"By thus stating the rule, we do not mean to *disturb the settled principles* governing its application in cases of presently available state remedies. See, e. g., Brown v. Allen, 344 U.S. 443, 447–450 [73 S.Ct. 397, 97 L.Ed. 469]." (emphasis supplied)

■ The remedy of the writ of error *coram nobis* is available in a proper case in the Pennsylvania trial courts of record and its Supreme and Superior Courts.

In the leading case of Commonwealth v. Harris, 351 Pa. 325, p. 327, 41 A.2d 688, p. 690 (1945) it was said:

"The writ of error coram nobis to nullify or reform a judgment lies only where facts exist extrinsic of the record, unknown and unknowable by the exercise of diligence at the time of its rendition, and which would, if known, have prevented the judgment either in its entirety or in the form in which it was rendered." [2]

■ It has been specifically held that it is available "to set aside a conviction obtained by duress or fraud" and "to prevent a miscarriage of justice." Commonwealth v. Valerino, 32 Pa.Dist. & Co. R. 363, 364–365 (1938); Commonwealth ex rel. v. Ashe, 28 Pa.Dist. & Co. R. 573, 577 (1937).

The holding in the cases cited are in accordance with the general rule so well stated by Judge Freedman [3] in his excellent article "The Writ of Coram Nobis" 3 Temple Law Quarterly (1928–1929) at page 398:

"Where a defendant enters a plea of guilty under duress or because of fraud or mistake, the remedy by writ of error *coram nobis* is of peculiar applicability in view of the absence of any other means of relief."

and in 24 C.J.S. Criminal Law § 1606(2):

"Coram nobis or its statutory equivalent is a remedy by which relief may be had from an unconscionable judgment; a measure born of necessity to afford accused a remedy against injustice when no avenue of judicial relief is, or ever was, available to him. The writ or motion relates only to fundamental rights, and was designed to purify and keep pure the administration of justice. The underlying purpose of the writ or motion is to redress an injury which has deprived accused of due process of law; and the availability of a motion in the nature of an application for a writ coram nobis to enable a convicted person, even after appeal and affirmance of conviction, to establish that the conviction was procured under circumstances which offend fundamental conceptions of justice constitutes a part of the protection afforded by the due process of law clause of the constitution."

Pursuant to the foregoing, the Order of the District Court denying the petition for a writ of habeas corpus will be affirmed for the reason that the petitioner has failed to exhaust presently available remedies in the Pennsylvania courts.

Sur Petition for Rehearing

Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.

PER CURIAM.

The petition for rehearing filed by Jeddy Wilkins the relator-appellant in the above entitled case having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

---

2. Cited with approval in Commonwealth v. Kurus, 371 Pa. 633, 634–635, 92 A.2d 196 (1952) and Commonwealth v. Mathews, 356 Pa. 100, 51 A.2d 609 (1947). The Superior Court of Pennsylvania has held to the same effect in Commonwealth v. Perry, 196 Pa.Super. 598, 176 A.2d 175 (1961).; Commonwealth v. Rogers, 188 Pa.Super. 194, 147 A.2d 169 (1958); Commonwealth v. Ondrejcak, 181 Pa. Super. 102, 124 A.2d 406 (1956); Commonwealth v. Brewer, 170 Pa.Super. 251, 85 A.2d 618 (1952).

3. United States District Court, Eastern District of Pennsylvania.

We affirmed the District Court's denial of relator's petition for a writ of habeas corpus for the reason that he has failed to exhaust presently available remedies in the Pennsylvania courts—the Pennsylvania Act of April 22, 1903, P.L. 245 § 1, 19 P.S. § 861, or the writ of error *coram nobis*.[1]

The relator does not dispute the availability of these remedies but merely contends, in disregard of Pennsylvania decisions, that they are not "proper" here. He further urges that in his habeas corpus proceedings in the Pennsylvania courts they were alerted to the abuse of due process now complained of in his federal habeas corpus action and that he has accordingly "exhausted his state remedies."

█ It is incumbent on federal courts to ascertain whether states afford an available remedy which has not yet been exhausted to correct an abuse of due process in the administration of their criminal laws.

█ It is not the function of federal courts to question the particular mode of relief which a state deems appropriate to remedy an abuse of due process, nor to substitute the federal concept of the scope of available remedies for that which the state courts may entertain. The Pennsylvania Supreme Court, for example, because of the view which it entertains with respect to the scope of the habeas corpus writ, has on occasion, required, in first degree murder convictions, that the applicant for relief resort to the provisions of the Pennsylvania Act of 1903 in that court.

Thus, in Commonwealth ex rel. Harris v. Burke, 374 Pa. 43, 96 A.2d 909 (1953)

where it was found that "The facts presented by the relator on this appeal would seem reasonably to justify his claim that he is entitled to some relief, but he has mistaken his remedy," the Supreme Court, in affirming the order of the court below dismissing relator's petition for a writ of habeas corpus, pointed out that application for relief could be made to it under the Act of 1903.[2] Pursuant to the Court's suggestion the relator then successfully invoked the provisions of the Act of 1903, and was ultimately granted a new trial. Commonwealth v. Harris, 1 Pa.Dist. & Co. R.2d 143 (1954).

One final comment. In the instant case, the Pennsylvania Supreme Court in affirming on appeal the order of the court below dismissing the appellant's petition for a writ of habeas corpus, 401 Pa. 347, 164 A.2d 333 (1960), cert. den. 364 U.S. 944, 81 S.Ct. 464, 5 L.Ed.2d 374 (1961), held that the issue presented, as to whether the finding of the trial court that the appellant was guilty of murder in the first degree, was supported by the evidence adduced following his plea of guilty, was reviewable only on appeal, and not in a habeas corpus proceeding. It dismissed without discussion the relator's additional point whether the lower court had erred in denying the writ of habeas corpus without taking testimony. These were the only two points presented in terms to the Supreme Court.

BIGGS, Chief Judge (dissenting).

I.

The court below had this to say about the conduct of the relator's, Wilkins', counsel, since disbarred, D.C., 205 F.Supp. 123, 127–128: "Wilkins maintained that the shooting was accidental

1. The Act of 1903 permits direct application for relief to the Supreme Court of Pennsylvania in first degree murder convictions whenever after discovered evidence creates a substantial doubt as to guilt. The remedy afforded by the Act of 1903 is not exclusive since the convicted murderer may, if he so desires, seek a writ of error *coram nobis* in the court in in which he was convicted.

2. In this case, a jury in 1926 returned a verdict of guilty of murder in the first de-

gree on its finding that a bullet from the relator's revolver had killed a policeman. In 1947, a ballistic expert of the Philadelphia Police Department, following an investigation, reported that the fatal bullet could not have been fired from the relator's gun. Thereafter, the relator instituted habeas corpus proceedings. It may be noted parenthetically that ballistic experts were not available to testify at the time of the 1926 trial.

and insisted that he would not plead guilty, but [his] counsel [Hardin] finally prevailed upon relator to change his plea. During this time relator claims he tried to discharge his attorney because of the disagreement as to his plea. His mother convinced him to continue with Hardin, since she had already paid him $500 and could not afford to hire another lawyer.

"The attorney told relator, and we believe this part of the testimony, that there was no first degree murder, and that he had arranged the matter with the District Attorney and with the court so that Wilkins would receive a light sentence if he pleaded guilty. Both relator and his mother testified to such conversations. The attorney also told Wilkins that he had interviewed the witnesses and their testimony would convict him. They would testify, according to the lawyer, that they saw Wilkins deliberately pull the gun and shoot the victim. These witnesses testified at our hearing that they never saw the attorney until the morning of the trial. We accept relator's version of these facts.

"On the day of the trial, relator withdrew his plea of not guilty and entered a plea of guilty. Under Pennsylvania law, a plea of guilty to murder is a plea of guilty generally. A hearing is then held by the court to determine the degree of guilt. The burden is on the Commonwealth to establish that the offense was in the first degree: Commonwealth ex rel. Dandy v. Banmiller, 397 Pa. 312, 155 A. 2d 197 (1959). As we have noted, after petitioner's hearing, the court found him guilty of murder in the first degree and sentenced him to life imprisonment.

"Relator now complains that the actions of his attorney deprived him of due process. Mere inappropriate advice to plead guilty is not of constitutional dimensions."

\* \* \*

"We are, it is true, concerned here with more than inappropriate advice to plead guilty, and with more than a promised light sentence. As we view this case, the significant fact is the deliberate misrepresentation by the attorney of the prospective testimony of certain witnesses. But the due process standard is solely whether or not the state played any part in the wrong done the accused."

\* \* \*

"At relator's trial there would have been nothing apparent to the court which would have indicated the underhanded method in which the attorney shirked his duty to his client and procured a guilty plea. The matters complained of here occurred prior to the trial and were unknown to the court or the prosecutor. On the facts before it, a plea of guilty was not so apparently unwarranted as to put the state on notice of any misconduct. Relator's trial may not have been a completely 'fair' one in the conceptualistic sense. However, intervention by this court requires that the denial of relator's rights be the doing of the state. There is no indication here that the state participated in any such denial, and the writ must be denied."

Was the substance of what the court below stated in its opinion, as quoted above, set out in the petition for habeas corpus filed by the relator in the Court of Common Pleas on November 18, 1959?[1]

The following was set out in the relator's petition for habeas corpus to the Court of Common Pleas of Philadelphia County:

"9. Petitioner's mother hired Attorney Herbert G. Hardin. Petitioner was duly arraigned and pleaded not guilty upon his return to Philadelphia.

"10 Petitioner's attorney interviewed him and insisted that he change his plea to guilty. He stated that he had

---

1. The relator had shot a man in a brawl in a Philadelphia bar-room. He was indicted for murder, and pleaded guilty generally, as prescribed by the law of Pennsylvania. Under the law of Pennsylvania a plea of guilty to a charge of murder is a plea of guilty generally and does not establish degree. Commonwealth v. Markle, 394 Pa. 34, 37, 145 A.2d 544, 545 (1958). The Court of Oyer and Terminer of Philadelphia County sentenced the relator to life imprisonment.

discussed it with the District Attorney and the Judge, and that if a guilty plea were entered, he would receive a minimum sentence on a lesser charge, but that were he to fight the case, he would be sentenced to death or receive life imprisonment.

"11. Petitioner refused the offer to plead guilty, stating the shooting was accidental and nothing else, and that he was guilty of no felony. He thereupon refused to discuss the matter further with the Attorney and asked his mother to retain another counsel who would help him.

"12. A few days later, the same attorney returned to the County Prison, telling petitioner that he had statements that would insure the death penalty, and showing him two statements, purportedly signed and notarized, and that the attorney further informed petitioner that the true facts had no bearing whatever on the outcome of the trial; that the only evidence worthwhile would be substantially as was in the statements.

"13. Petitioner's mother visited him shortly thereafter and assured him that the attorney was qualified, and further that he had reported to her his discussion with the District Attorney and the Judge, and both had averred his sentence would be light were he to plead guilty, but that if he chose to plead innocent, he would be electrocuted or sent to prison for life.

"14. On March 2, 1950, petitioner entered a plea of guilty. The record shows not one state witness testified as to the crime of first degree murder. The record shows that the lawyer, an officer of the Court, never interviewed one witness or checked one fact, and that he deliberately and unlawfully deceived petitioner into changes [sic] his plea to guilty.

"15. The record shows the attorney did not make an arrangement with the Judge, although it does suggest an understanding between the lawyer and the Prosecuting Attorney that no first degree murder had been committed, as is indicated below:

" 'Mr. Kane (Prosecutor)

" 'Q. Jeddy, according to the statement that you gave here today, it is my understanding that you contend that this was an accidental shooting.

" 'A. That is right. I was not intending to shoot anybody.

" 'Q. You did not intend to shoot anybody?

" 'A. No.

" 'Q. And therefore you had not committed any crime because it was accidental?

" 'A. I had the gun all right.' "

In the statement of "Questions Involved," set out in his petition, the relator did not raise the issue of his counsel's deliberate misrepresentations to him which caused him to change his plea of not guilty to guilty. It would seem, however, that every ingredient set out in the opinion of the court below quoted above, id., supra, 205 F.Supp. 127-128, is contained in the paragraphs quoted above from the relator's petition.

The Court of Common Pleas dismissed the petition without a hearing, stating, inter alia: "The petitioner  *  *  * contends that he was inadequately represented by counsel in that the attorney engaged for him by his mother failed to interview the witnesses and led him to believe that he would receive a light sentence. A careful reading of the record indicates no improper action on the part of counsel. However, the fact that a criminal, after conviction, believes that his trial was not wisely conducted by his counsel, furnishes no ground for the issuance of a writ of habeas corpus." The statement contained in the sentence next to the last one quoted above is incorrect. This is demonstrated by a reading of the paragraphs of the relator's petition for habeas corpus quoted above.

The Supreme Court of Pennsylvania reviewed the decision of the Court of Common Pleas. In his brief filed to the Supreme Court the relator stated in part,

first, under the heading of "Questions Presented": "2. Did the trial Court exceed its jurisdiction by imposing a life sentence through a misconception of the law and whether the life sentence imposed on a coerced plea of guilty was so lacking in proof, to constitute first degree murder, so that to give it effect, it would amount to that fundamental unfairness at war with due process of law and the equal protection of law as secured by the Fourteenth Amendment of the Constitution of the United States?" In his brief proper the petitioner stated on the point of coercion of his counsel, the following: "A conviction on a plea of guilty coerced by an officer of the Court is not consistent with due process of law as secured by the Fourteenth Amendment. Where a plea of guilty is so coerced that it is deprived of its validity to support the conviction, the coercion likewise deprives the plea of its validity as a waiver to the accused's right to assail the conviction. Whether the petitioner was coerced by intimidation was appropriately raised by a habeas corpus petition, where the facts relied on were dehors the record, and their effect on the conviction is not open to consideration and review on appeal, the use of the writ of habeas corpus to test the Constitutional validity of the conviction is not restricted to cases where the conviction is void for want of jurisdiction of the trial Court, but extend also to cases where conviction has been in disregard of the accused's Constitutional rights and where the writ is the only effective means of preserving those rights."

The brief of the appellee in the Supreme Court of Pennsylvania states the following: "In the instant case, appellant raises for the first time, in his appeal, that his plea of guilty was coerced by threats of the electric chair and a promise of a light sentence.[1] [1 Appellant did not raise the issue below, but he had it in his statement of facts.] Appellant avers that his attorney advised him to plead guilty because he, the attorney, had discussed the matter with the District Attorney and the Judge, and he, appellant, would receive a lighter sentence than he would receive if he did not plead guilty."

The Supreme Court of Pennsylvania in a per curiam opinion, 401 Pa. 347, 164 A.2d 333 (1960), cert. denied, 364 U.S. 944, 81 S.Ct. 464, 5 L.Ed.2d 374 (1961) affirmed the order of the court below dismissing the petition. After pointing out that the relator had taken no appeal from the finding or imposition of sentence, the Supreme Court stated: "The matters complained of herein are such as are reviewable only on appeal. Petitioner cannot, therefore, now avail himself of habeas corpus as a remedy since the writ may not be used as a substitute for an appeal. Com. ex rel. Bishop v. Maroney, 1960, 399 Pa. 208, 159 A.2d 893; Com. ex rel. Elliott v. Baldi, 1953, 373 Pa. 489, 96 A.2d 122."

The relator is a comparatively young and uneducated man. He appeared *pro se* in the Court of Common Pleas and also before the Supreme Court of Pennsylvania. He apparently was the major author of his own pleading and evidently wrote his own briefs though perhaps he had some assistance in the preparation of his brief to the Supreme Court of Pennsylvania. His pleading is far from artistic as are his briefs but I think it cannot be contended successfully that the issue of the relator's counsel's misfeasance was not before the Court of Common Pleas. Though the issue was not included in the statement of questions presented, the operative facts relating to counsel's misfeasance were set out clearly in the petition and the Court of Common Pleas must have passed on it because it reached the conclusion and expressly stated in its opinion that, "A careful reading of the record indicates no improper action on the part of counsel." In short, the court passed upon the issue whether it was adequately raised or not, though, as stated, in the view of the present writer, it was adequately raised since it was plainly on the record. The dignity of our system of administering justice requires that liberal concessions should be made to the lay pleader. This

court expressed that view in Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 244 (1945), albeit the proceeding then under review had been brought in the United States district court and not in a state tribunal. In the case at bar when the judgment of the Court of Common Pleas was reviewed by the Supreme Court of Pennsylvania there is no doubt but that the issue of the relator's counsel's misfeasance was fairly before it on the record for it was raised by the relator's brief under his statement of the questions involved, was there stated clearly and concisely, and the appellee attempted to answer it. Moreover, it seems clear that the Supreme Court of Pennsylvania passed upon the issue unless it be argued that the first five words of the first sentence of the opinion of the Supreme Court of Pennsylvania, quoted herein, viz., "The matters complained of herein" limited the adjudication of that court to questions raised with the precision required by the delicate hair-splitting of ancient common law pleading. Moreover Rule 126 of the Rules of Civil Procedure of Pennsylvania, 12 P.S., 12 P.S.App. promulgated by the Supreme Court and applicable to the Court of Common Pleas provides: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." To make fine-spun distinctions seems inconsonant with the duty of the highest tribunal of the Commonwealth. In view of the foregoing the conclusion is compelled that the Supreme Court did pass upon the issue of relator's counsel's misfeasance and decided as it stated, that the issue "was reviewable only on appeal."

Bearing in mind that the Supreme Court of Pennsylvania and the Court of Common Pleas had the issue of relator's counsel's misfeasance before it, was either court in a position where it could have supplied the remedy? The answer must be in the affirmative. True, the relator asked for habeas corpus but the Supreme Court could have granted relief under the Act of 1903, P.L. 245, § 1, 19 P.S. § 861, referred to in the opinion of this court, or it could have granted a writ of error coram nobis on the record presented to that Court on the review. Or in the alternative, the Supreme Court of Pennsylvania in the exercise of its discretionary jurisdiction could have treated the relator's case on review as the equivalent of an original application to it under the Act of 1903 had that Court thought this remedy was available to the relator.[2] To assert to the contrary is to say nothing more than that the relator put the wrong label on the remedy that he desired, that, so to speak, he pushed the button marked habeas corpus instead of a button marked Act of 1903 or a button

---

2. The Supreme Court of Pennsylvania in Commonwealth v. Mathews, 356 Pa. 100, 102, 51 A.2d 609, 610 (1947), stated:
   "Since the Act of April 22, 1903, P.L. 245, 19 P.S. § 861 there is no justification for invoking the writ of error coram nobis in any case in which a defendant is convicted of murder in the first degree. See footnote 7, at page 342, of our opinion in 351 Pa., at page 697 of 41 A.2d, in the Harris case, supra. Section 1 of the Act of 1903 provides that: 'Whenever by petition, supported by after discovered evidence, it shall be made to appear to the supreme court that there is ground for substantial doubt as to the guilt of any prisoner convicted of murder of the first degree, the said court shall have power to authorize the court of oyer and ter-

miner in which such prisoner has been convicted to grant a rule for new trial, nunc pro tunc, notwithstanding the expiration of term in which such prisoner was convicted and sentenced; and thereupon the said court of oyer and terminer may, in its discretion, grant and proceed to hear such rule, as in other cases.' The petition now before us for a writ of error coram nobis presents no case either for the writ asked for or for the exercise of the authority given this court by the Act of 1903."
   It appears, therefore, that the Supreme Court of Pennsylvania has equated the remedy under the Act of 1903 in first degree murder cases with the remedy available by way of writ of error coram nobis.

marked *coram nobis*. But in the light of all the circumstances, particularly in view of the fact that the Supreme Court of Pennsylvania has stated that the relator's case was reviewable only on appeal, the relator has exhausted his state remedies. Fay v. Noia, 372 U.S. 391, 434–435, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). On the other hand, if the opinion of this court be correct and the Supreme Court of Pennsylvania as well as the Court of Common Pleas had a remedy at hand, the opportunity to exercise it was present and both tribunals failed to do so. See Wade v. Mayo, 334 U.S. 672, 680–681, 68 S.Ct. 1270, 92 L.Ed. 1647 (1948). In either event there has been an exhaustion of state remedies.

To reiterate, perhaps needlessly, it would appear that this court would require the relator to file a new suit entitled either application for *coram nobis* or application for relief under the Act of 1903. It is not clear from the opinion of this court which remedy is believed to be the appropriate one. There is a suggestion in the opinion that either or both writs should be available to grant the relator relief were his petition so entitled. But what answer can be given to the statement of the Supreme Court of Pennsylvania that the relief could be granted to the relator only by way of an appeal, and the indisputable fact that time for an appeal has long since passed? I can conceive of none, unless it be that the relator be required to start again up the ladder by application for *coram nobis* in the Court of Common Pleas, thence to the Supreme Court of Pennsylvania and thence to the Supreme Court of the United States, or begin with an original petition filed to the Supreme Court of Pennsylvania under the Act of 1903, followed by an application for certiorari to the Supreme Court of the United States if relief be denied him. The relator has already served ten years of a life sentence and the tasks suggested in the foregoing sentence, assuming that the relator can meet the requirements of correctly pleading

his case, seem under the circumstances to 340 U.S. 949, 71 S.Ct. 528, 95 L.Ed. 684 (1951), was induced by chicanery. It is impose an unwarranted burden on the courts and on the relator as well.

## II.

The fundamental federal issue is whether or not the relator received a trial compatible with due process. Without attempting to belabor the obvious, this question, on the present record, admits of only one answer. Wilkins' plea of guilty, the equivalent of a confession of guilty, Donnelly v. United States, 185 F.2d 559, 560 (10 Cir. 1950), cert. denied, 340 U.S. 949, 71 S.Ct. 528, 95 L.Ed. 684 (1951), was induced by chicanery. It is hornbook law that a confession or a plea of guilty induced by coercion or promise of benefit cannot stand. See Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942). The conduct of the relator's counsel in the case at bar embraces these types of infractions. The court below, while recognizing this fact, nevertheless felt constrained to deny relief on the ground that the conduct in question did not involve "state action." In my view this position is wholly untenable and denies constitutional guarantees.

The right to "the Assistance of Counsel" in criminal proceedings guaranteed by the Sixth Amendment is so fundamental to the concept of a fair trial that it is equally applicable to state prosecutions via the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).[3] In order to comply with the dictates of due process in this respect, it is necessary for state courts to assign counsel to represent indigent defendants to conduct a reasonably competent defense on their behalf. See Michel v. Louisiana, 350 U.S. 91, 100–101, 76 S.Ct. 158, 100 L.Ed. 83 (1955); Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932). But the cloak of constitutional protection does not extend only to indigents. A defendant with sufficient financial resources

---

3. It had long been held that an accused is entitled to the assistance of counsel in capital cases. See Powell v. Alabama,

287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

does not waive his right to adequate representation and fair trial by being able to employ counsel on his own behalf. See Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); cf. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945). Even if it be assumed that due process does not require the reasonably effective assistance of privately retained counsel—a proposition which is itself questionable, see the last-cited cases—it most certainly requires the honest assistance of counsel. As was stated in Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 241–242, 87 L.Ed. 268 (1942), albeit it another connection: "Essential fairness is lacking if an accused cannot put his case effectively in court."

Wilkins' counsel shirked his duty and lied to him as to essentials of his case in order to get him to plead guilty. Both effective and honest assistance were, therefore, lacking at the relator's trial. The trial was in direct contravention of traditional notions of fairness. The state must bear the onus for this situation. Its responsibility does not necessarily rest upon fault.[4] Rather its responsibility is a broader, vicarious accountability for that which transpires in criminal proceedings conducted by it. When the state secures a conviction, that conviction must rest upon a solid foundation. The test is whether or not the defendant received a fair hearing. That test cannot be deemed to have been met under the circumstances presented by the case at bar.

I think that the court below had before it sufficient undisputed facts to require the issuance of the writ of habeas corpus sought by the relator and that he should be promptly retried by the Common-wealth. The Superior Court of Pennsylvania has held that no issue of double jeopardy can be validly raised under the circumstances. Commonwealth v. Townsend, 167 Pa.Super. 71, 76–77, 74 A.2d 746, 749 (1950), cert. denied, Townsend v. Burke, 340 U.S. 915, 71 S.Ct. 286, 95 L.Ed. 661 (1951). See also United States ex rel. Scoleri v. Banmiller, 3 Cir., 310 F.2d 720, 725 (1962), and the decisions set out in note 6 cited in the text.

I must, therefore, respectfully dissent from the refusal of the majority to grant rehearing en banc.

McLAUGHLIN and GANEY, Circuit Judges, join in this dissent.

---

4. It is stated, and correctly so, that since the relator insisted on his innocence in open court and denied that he had pulled the trigger, claiming the shooting was accidental, the state trial court should of its own motion have ascertained that the relator understood fully the nature of the plea of guilty and what the consequences would be if he so pleaded. But, in the gross distortion and miscarriage of justice brought about by the relator's counsel, this point, important as it may be, need not be pressed in this dissenting opinion.