Commonwealth *v.* Mervin, Appellant.

554

Submitted June 18, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Malcolm W. Berkowitz,* and *Berkowitz and Gutkin,* for appellant.

*F. Ned Hand* and *Timothy H. Knauer,* Assistant District Attorneys, and *William H. Lamb,* District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., September 23, 1974:
Appellant was tried in 1970 on charges of assault with intent to kill, aggravated assault and battery, and

assault and battery in connection with a shooting incident which occurred at the Horse and Hound Lounge in West Chester, Pennsylvania. After a trial which lasted from October 13, to October 22, 1970, appellant was acquitted by a jury on all charges.

In his defense at that trial, appellant called four witnesses who testified that they were at the Horse and Hound on the night in question, and that during an argument between appellant and the victim of the shooting, the victim appeared to draw a knife and made an attempt to stab the appellant. As a result of investigations which occurred after the trial,[1] appellant was arrested in April of 1972 on charges of perjury, conspiracy, and subornation of perjury. At his trial in December of 1972, appellant was convicted of four counts of subornation of perjury and one count of conspiracy. The four counts upon which the convictions were based involved the four witnesses previously discussed. From the judgments of sentence imposed thereon, this appeal was taken.

Appellant's first contention[2] is that the trial court erred in refusing to charge the jury that in order to sustain its burden of proof of subornation of perjury, the Commonwealth must prove the offense in accordance with the so-called "two witness rule" applicable to perjury. That rule, in a perjury prosecution, requires proof of the *falsity element* of the crime by the direct testimony of two witnesses or the direct testimony of one witness plus corroborating evidence. See *Commonwealth v. Field*, 223 Pa. Superior Ct. 258, 298 A. 2d 908 (1972).

---

[1] The first hint of the possibility of perjury was disclosed in articles appearing in the Philadelphia Evening Bulletin in February of 1972.

[2] Those contentions not discussed herein have been considered by the court, and do not merit extended discussion.

In its charge on the perjury counts, the trial court carefully delineated each of the elements of perjury explaining the "two witness rule" as applied in Pennsylvania. The court then immediately charged the jury that the crime of subornation of perjury requires proof of perjury by a witness plus proof that the accused induced, persuaded, and instigated the witness to commit the crime of perjury. The additional element does not require proof by more than one witness. *Commonwealth v. Billingsley,* 160 Pa. Superior Ct. 140, 144, 50 A. 2d 703 (1947), aff'd., 357 Pa. 378 (1947). Appellant has not alleged that the Commonwealth failed to meet the "two witness rule" in proving the falsity of the perjured testimony, and his argument that the subornation of those witnesses must be proved in the same manner must be rejected.

Appellant's second contention is that he was denied the right to make a meaningful summation to the jury. Throughout the final two days of the trial, the court warned the attorneys for both sides that they should be prepared to make a summation as soon as all of the evidence was in. When the testimony was concluded, defense counsel was given forty-five minutes to prepare his summation which lasted for ninety minutes. Following his summation, a recess of one and one-half hours was taken for the jurors to have dinner following which the district attorney addressed the jury. In light of the trial judge's repeated admonition to both sides to be prepared to make argument, we cannot say that the trial judge abused his discretion or deprived appellant of the right of summation by limiting preparation time to forty-five minutes following the close of testimony. Counsel's assertion that he would have been better able to argue the nuances of the evidence had he been allowed more time would be true in every case. Unless there is such an unreasonable limitation of time

that effectively denies a defendant the right to summation a criminal conviction should not be disturbed.

Appellant next contends, citing *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963), that the convictions should be overturned because of the failure of the Commonwealth to produce evidence which it knew to be exculpatory. The evidence referred to is a letter from a Dr. Lenwood Wert confirming the doctor's treatment of appellant for a stab wound on the day of the shooting incident. The evidence indicates that it was appellant who requested Dr. Wert to write the letter and that appellant was always aware of its existence. Thus, this is not a case of the Commonwealth suppressing exculpatory evidence the existence of which was unknown to the defense. Furthermore, Dr. Wert took the stand and testified that he did treat the appellant and later prepared the letter in confirmation thereof. Thus, the jury was fully aware of the letter. Finally, this letter was relevant only to the charges of perjury and the subornation of perjury of Dr. Wert. On these counts appellant was acquitted, thus negating the possibility that appellant was in any way prejudiced by the alleged error.

Appellant next advances the contention that the court erred in denying his requests for a bill of particulars and for pre-trial discovery. Appellant sought by each of these motions to obtain police investigative records; records of investigations by a newspaper reporter who had first suggested the possibility of perjury at appellant's trial in 1970; the names of all persons involved in the investigations; the persons with whom all investigators communicated; and all statements of witnesses, documents, and physical evidence pertaining to his arrest and indictment. As to appellant's motion for a bill of particulars, it is clear that the information sought was not within the purview of such a bill. The purpose of bill of particulars is to give

notice to the accused of the offenses charged in the bill of indictment so that he may prepare a defense, avoid surprise, or intelligently raise pleas of double jeopardy and the bar of the statute of limitations. See *Commonwealth v. Simione,* 447 Pa. 473, 291 A. 2d 764 (1972); *Commonwealth v. Sabo,* 83 Pa. Superior Ct. 166 (1924); *United States ex rel. Stevenson v. Myers,* 234 F. Supp. 286 (E.D. Pa. 1964). It is not designed to perform the function of a discovery device and the Commonwealth's evidence is not a proper subject to which a petition for a bill may be directed. *Commonwealth v. Senk,* 412 Pa. 184, 194 A. 2d 221; vacated on other grounds, 378 U.S. 562, 84 S. Ct. 1928 (1963). Appellant's petition sought information which was clearly not obtainable through a bill of particulars. The denial of his petition was not an abuse of discretion.

Likewise, the trial court's denial of appellant's petition for discovery of the same information was proper. Despite our Supreme Court's indication that wider discovery rights in criminal cases are desirable, the Court has recently held that the permissible scope of pre-trial discovery is limited to those matters expressly provided for in Pa. R. Crim. P. 310: "All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. *No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons.* The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper. In no event, however, shall the court order pretrial discovery or inspec-

tion of written statements of witnesses in the possession of the Commonwealth. Adopted June 30, 1964. Eff. January 1, 1965." [Emphasis supplied.] Clearly, the information sought was not that which is expressly discoverable under Rule 310. Nor did appellant make any showing of or alleged "exceptional circumstances or compelling reasons" to justify inspection of matters other than his own statements. The request was therefor properly denied. *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 320 A.2d 134 (1974).

Appellant also contends that the indictments returned against him should have been dismissed by reason of pre-trial delays. Appellant's argument is not directed to the delay between indictment and trial, but to the delay between the date of the offense (October, 1970) and his arrest and subsequent indictment (April, 1972). Initially, we note that the indictments were returned well within the five year period of the statute of limitations. Act of March 31, 1860, P. L. 427, §77, 19 P.S. §211. Moreover, the delay between the offense and the arrest appears to have been the result of legitimate investigation of the alleged crimes, as prosecuting officials were not aware that perjury may have been committed until early 1972. Thus, the instant case does not present a situation in which the police knew of a crime and its perpetrator, and thereafter neglected to proceed with the case to the prejudice of appellant. Compare *Commonwealth v. De Rose,* 225 Pa. Superior Ct. 8, 307 A. 2d 425 (1973). At the hearing on his motion to dismiss the indictments, appellant failed to produce any evidence of prejudice to his defense by reason of the delay. Indeed, appellant knew which witnesses were alleged to have been suborned, was aware of their testimony at the previous trial, and had a complete list of the witnesses called by prosecution and defense at the prior trial, thus providing a rather complete investigative basis for a defense of the subornation charges.

Appellant further contends that his acquittal on the various assault charges is a bar to the subsequent prosecution for subornation of perjury. Relying upon the doctrine of collateral estoppel, appellant argues that the jury's acquittal in the first trial represents a conclusive determination of the truthfulness of the testimony in connection with assault charges which may not be further litigated. Although the jury in the first trial may have believed the testimony relating to appellant's theory of self defense, it is manifestly clear that the ultimate issues of fact involved in the two proceedings were entirely different, thus precluding the applicability of collateral estoppel. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S. Ct. 1189 (1970). The single issue in the second trial was not whether, in truth, appellant was attacked, but whether appellant procured four witnesses to testify falsely that they were present and witnessed the attack. To sustain appellant's argument in the instant case would be to allow the concept of collateral estoppel, which is designed to protect an accused from prosecutorial harassment, to be used as a shield to insulate a defendant from his own wrongdoing in fraudulently obtaining a favorable result in a criminal case.

Appellant also contends that he is entitled to a new trial because of the Commonwealth's failure to call certain witnesses who testified at the assault trial and who would have given favorable testimony at the subornation of perjury trial. These witnesses who are unnamed were presumably known to the appellant by virtue of their having testified previously, and could have been called by appellant to testify in his behalf. This is thus not a case of the Commonwealth having favorable evidence and failing to notify the defendant of its existence, but rather one of the defendant being aware of the evidence and failing to produce it. Under the circumstances, appellant cannot complain of the Commonwealth's failure to call these witnesses as part of

its case. See *Commonwealth v. Ellis,* 445 Pa. 307, 284 A. 2d 735 (1971) ; *Commonwealth v. Osborne,* 433 Pa. 297, 249 A. 2d 330 (1969).

Appellant's next contention is that the court erred in not providing an investigator at the expense of the Commonwealth. Without reaching the question of whether the provision of such ancillary services may be required in a proper case,[3] we do not believe that the court below erred in its refusal in the instant case. Beyond an allegation that an investigator would aid him in the preparation of a defense, appellant, an experienced undercover police agent, made no showing of a particularized need for such services. Although he possessed a wealth of information from the first trial and from the preliminary hearing, appellant did not indicate with any specificity whatsoever those matters which he wished to, but was unable to, investigate unassisted. In view of these circumstances, we are not persuaded that appellant's defense was hindered or counsel was any less effective by reason of the court's refusal to appoint an investigator. See *Commonwealth v. Phelan,* 427 Pa. 265, 234 A. 2d 540 (1967).

Finally, appellant contends that the court erred in not granting a change of venue requested by appellant because of prejudicial pre-trial publicity. Initially, it must be noted that appellant has not specified the publicity which he now claims to have been prejudicial. The motion for a change of venue was pencilled in on a motion for continuance filed on the day trial was to begin. This late filing was in clear violation of Pa. R. Crim. P. 305 which requires the filing of applications for pre-trial relief ten days before trial "unless oppor-

---

[3] The, e.g., Act of March 22, 1907, P. L. 31, 19 P.S. §784, providing for appointment of investigators at county expense in capital cases; Criminal Justice Act, 18 U.S.C. §3006 A providing for the appointment of investigators at government expenses to indigent defendants.

tunity therefor did not exist or the defendant or his attorney was not aware of the grounds for the application." It is therefore necessary to determine whether appellant was unaware of the grounds for the application at the time it should have been filed.

The vast majority of the publicity involved in the instant case was circulated in the media long before appellant came to trial.[4] Although it may be true, as appellant argues in his brief, that "the community had been informed by the authorities that [appellant] was guilty of the offenses charged, that he had a past record of criminal behavior and unlawful behavior, as well as constant stories about, and photographs of [appellant], the scene of the alleged crime, and the other principals involved, with detailed accounts of the background and motivations for the alleged crimes, coupled with other widespread publicity in the community," the record in this case indicates that, with the exception of one newspaper article, all of the outlined newspaper publicity occurred well in advance of appellant's trial. We must therefore conclude that the basis for a change of venue existed prior to the filing of the application for relief, and that the motion was not timely filed in accordance with Rule 305. Moreover, the trial judge conducted an

---

[4] The scant record before us in regard to the nature and extent of pre-trial publicity does not provide a basis for a consideration of the Commonwealth's argument that much of the publicity was the direct result of appellant's attempts to arouse public sympathy in his favor through a series of news conferences and publicized appearances at service clubs in the community. If true, the Commonwealth should have developed these matters in the court below. The Commonwealth's attempt to raise this issue on appeal is in direct violation of the American Bar Association's Standards Relating to the Prosecution Function, Approved Draft, 1970, §5.9: "It is unprofessional conduct for the prosecutor to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such matters are of common public knowledge based on ordinary human experience or matters of which the court may take judicial notice."

extensive voir dire of the prospective jurors, specifically examining them in regard to their exposure to pre-trial publicity. After a panel was selected, appellant's counsel expressed his satisfaction with the selection.

The judgments of sentence are affirmed.