398 A.2d 687
**COMMONWEALTH of Pennsylvania**
v.
**John A. MERVIN, Appellant.**
Superior Court of Pennsylvania.
Submitted March 20, 1978.
Decided Feb. 23, 1979.

---

Malcolm W. Berkowitz, Philadelphia, for appellant.

Timothy H. Knauer, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

VAN der VOORT, Judge:

Appeal is taken from an Order denying relief sought pursuant to the Post Conviction Hearing Act. Act of 1966, January 25, P.L. 1580, 19 P.S. 1180–1 *et seq.* Relevant facts are that appellant, employed as an undercover agent by the West Chester Police Department, was charged with subornation of perjury and conspiracy as a result of investigations of circumstances surrounding a 1970 trial of Mervin for various assault charges. The 1970 trial resulted in an acquittal, but the December, 1972, trial for subornation of perjury and conspiracy ended with convictions. We affirmed judgments of sentence in appellant's direct appeal. *Commonwealth v. Mervin*, 230 Pa.Super. 552, 326 A.2d 602 (1974), allocatur refused. Thereafter, appellant sought P.C. H.A. relief, and argument by defense and Commonwealth counsel was held on June 11, 1976.

In his *pro se* petition, to which counsel filed no amended pleading, at argument below, and now before us, appellant argues that evidence became available after his 1972 trial which would have affected its outcome. From the record, the facts of this allegation are these. The crux of the Commonwealth's case was that on an evening in October of 1970, in the hospital room of West Chester police officer Robinson, there gathered a group, appellant included, whose purpose was the subornation of witnesses involved in Mervin's 1970 trial. Relative to this, at appellant's subornation and conspiracy trial, a nurse testified that she entered Robinson's room on the night of October 12, 1970, to find there four men, whom she could not identify, and whom she told to leave as it was after visiting hours. An officer Boyd testified that he had visited in Robinson's room at least twice and there had been no one there but Robinson's wife. Robinson himself invoked his Fifth Amendment immunity from testifying at this trial. Mervin was found guilty.

Thereafter, the Commonwealth brought Robinson to trial for the same charges, offering some kind of plea bargain or immunity so that he would take the stand to testify, which he did. His testimony was that on the night of October 12,

1970, the night of the nurse's termination of the gathering, he was visited by certain officers of the police department, whom he named, including Boyd, and "others" left unnamed. At Robinson's trial, Boyd testified that he had several times visited Robinson's hospital room with another officer, unnamed. There is an obvious conflict in the testimony of Boyd, and it is the Robinson testimony from his trial which is the evidence that was unavailable to Mervin when he was tried and which is the subject of his P.C.H.A. petition.

We agree with appellant that this testimony from Robinson, who refused to testify at Mervin's trial, is the type of evidence unavailable at the time of trial and subsequently available, which is comprehended by the Act, *id.*, § 1180–3(c)(13).[1] The Act requires that it must also be exculpatory evidence. Thus there is a question whether or not Robinson at his trial said that Mervin did not appear in his room on the night of October 12, 1970, or on any other night. From the record of the instant case, specifically the P.C.H.A. proceeding, we are informed that he named several names and then used the word "others" to say who was there. Mervin was neither named nor identified as one of the "others." Appellant argues that Robinson did not name Mervin; therefore Mervin could not have been present when the witnesses were suborned, necessarily inferring that Mervin was not one of the "others." The Commonwealth argues essentially that this inference is stretching the facts and arguments past the breaking point. From the P.C.H.A. proceeding—which we again reiterate was only argument and not testimony—and other matter of record, we are left in doubt as to the exculpatory nature of the unavailable testimony. It would clearly be exculpatory under appellant's interpretation, if Robinson stated affirmatively that Mervin was not in his room in October of 1970; but clearly

---

1. Since this evidence was not available from any other source, the other witnesses having divergent stories as to the occupants of the hospital room on the night of the alleged criminality, we cannot agree with the lower court that the unavailable evidence was merely cumulative and as such not grounds for consideration P.C.H.A.

not exculpatory by the Commonwealth's view.[2]  We will remand for an evidentiary hearing at which *testimony* will be taken or specifically reviewed and included in the record to clarify the existing ambiguity as to whether or not Robinson, in his own trial, testified that Mervin was not present in Robinson's room when the subornation apparently occurred, to the end that the exculpatoriness, or lack thereof, in the unavailable evidence may be determined.

██  Both appellant and the lower court in its opinion repeatedly deal with the writ of error coram nobis.  The principles giving allowance to this writ, that evidence unavailable at trial becomes available and that it compels the opposite result, are similar to the Act, § 1180–3(c)(13), which allows post-conviction relief when exculpatory evidence subsequently becomes available "that would have affected the outcome of the trial if it had been introduced."  While the writ still exists, it has been supplanted by the Post Conviction Hearing Act except in the rarest situation.  *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971) and *Commonwealth v. Runkle*, 250 Pa.Super. 130, 378 A.2d 488 (1977).  This case is not one of the extraordinary instances warranting the use of the writ coram nobis because appellant has filed his petition P.C.H.A. and seeks relief solely under the Act and not by petition for writ of coram nobis.

██  We find appellant's final arguments without merit and affirm.  He argues that the state has unconstitutionally used perjured testimony, viz., Boyd's.  Act, *id.*, § 1180–3(c)(9).  It is only appellant's assertion now that the inconsistency in Boyd's testimony at Mervin's trial compared to it at Robinson's trial constitutes perjury by Boyd.  Whatever inconsistency there is in Boyd's testimony he never placed Mervin in Robinson's room so far as the record before us discloses.  Further, appellant argues that the state unconsti-

---

2.  At the close of the June 11, 1976, P.C.H.A. proceeding, the lower court states that it will get the transcripts of the Robinson trial for study of the very issue which we are unable to resolve.  However, the opinion subsequently filed provides no answer and no indication that said transcripts resolve the ambiguity.

tutionally suppressed from Mervin at the time of his trial the evidence of Robinson's having been granted a bargain or immunity in his trial.[3] In his petition, Mervin did not allege this is a reason for relief P.C.H.A., and it must now be considered waived.

The record is remanded with directions that the court below determine whether or not Robinson in his own trial testified affirmatively that Mervin was not in Robinson's hospital room at any time when the subornation and/or the conspiracy took place in October of 1970. If Robinson gave such affirmative testimony the court below shall grant a new trial. If he did not give such testimony the order shall stand affirmed.

Affirmed in part and remanded in part.

SPAETH, J., concurs in the result.

CERCONE, President Judge, files a dissenting statement.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

CERCONE, President Judge, dissenting:

I dissent and would affirm the order of the lower court.

---

**3.** The record before us does not disclose the apparent inconsistency as to how Robinson who was granted immunity, as the lower court and appellant call it, went on to trial.