439 A.2d 1227
**COMMONWEALTH of Pennsylvania**

v.

**John FAY, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted April 29, 1981.

Filed Jan. 14, 1982.

Kenneth W. Johnson, Rockwood, for appellant.

George B. Kaufman, Assistant District Attorney, Somerset, for Commonwealth, appellee.

Before CERCONE, President Judge and BROSKY and HOFFMAN, JJ.

CERCONE, President Judge:

Appellant, John Fay, Jr., takes this appeal from the order of the court below denying appellant relief under the Post Conviction Hearing Act [1] (PCHA). For the reasons set forth below, we find that the court erred and we reverse.

[1] The Post Conviction Hearing Act, 1966, Jan. 25, P.L. (1965) 1580, § 1, 19 P.S. §§ 1180–1 et seq., as amended by Act No. 1980–77.

On December 22, 1972, a criminal complaint was filed in Somerset County against appellant charging him and two others with the offenses of armed robbery and conspiracy stemming from the holdup of a supermarket. Several months later, when appellant's case was called for trial, it was learned that appellant was then in a federal penitentiary serving a sentence of five to fifteen years for bank robbery, whereupon appellant's case was continued. Subsequently, appellant was temporarily transferred from the federal penitentiary to the Cambria County jail because appellant was at that time awaiting trial in Cambria County on a charge of criminal homicide. Appellant's homicide charge had not yet gone to trial when, on February 25, 1974, appellant was transferred to Somerset County for trial on the instant charges. On this date, appellant entered a plea of guilty.

During the guilty plea colloquy, the court advised appellant of the possible sentence which he might receive, saying, "Now that offense [armed robbery] carries with it a maximum fine of $10,000.00, or imprisonment of not more than twenty years, or both." However, the court did not advise appellant that his sentence in this case might run consecutively with the sentence he was then serving on the federal conviction. Appellant did, in fact, receive a sentence of five to fifteen years to run consecutively with his federal sentence. Appellant took a direct appeal in which he challenged the legality of the sentence but did not raise the issue as to whether or not the guilty plea colloquy was defective. Appellant's sentence was affirmed by this Court. *Commonwealth v. Fay*, 232 Pa.Superior Ct. 724, 334 A.2d 307 (1975).

Thereafter, appellant, by new counsel, filed the herewithin PCHA petition in which he alleges that his appellate counsel, who was the same attorney who represented appellant at trial, was ineffective for failing to raise the issue regarding the adequacy of the guilty plea colloquy. A hearing was held on this petition and the court found that the guilty plea colloquy was not defective.

■ Before this Court decides the merits of this petition, we must first address ourselves to the procedural problems which accompany this case. At the time that appellant filed his petition, appellant was incarcerated in federal prison. Section 3 of the Post Conviction Hearing Act stated, then as now, that to be eligible for relief under this legislation, the petitioner must show, *inter alia*, "that he is incarcerated in the Commonwealth of Pennsylvania under a sentence of death or imprisonment, or on parole or probation." A procedural situation comparable to appellant's was presented to this Court in *Commonwealth v. Ditmore*, 242 Pa.Superior Ct. 248, 363 A.2d 1253 (1976),[2] where a PCHA petitioner was then incarcerated in West Virginia. We held that the petitioner in *Ditmore* failed to meet the eligibility requirements of section 3. We find the same to be true of appellant's case.

However, this does not leave appellant in limbo, so to speak, until he begins serving his sentence in Pennsylvania. In *Commonwealth v. Sheehan*, 446 Pa. 35, 285 A.2d 465 (1971), the Supreme Court ruled that a petition which does not meet the eligibility requirements of the PCHA might be treated as a common law petition for writ of *coram nobis.* On this point the Court wrote:

> The intent of the Act, however, was not to abolish the common law remedies of habeas corpus and coram nobis, but rather to promulgate an exclusive, well-defined procedure for the presentation of those grievances set forth in the Act by an aggrieved person who is under the duress of punishment, whether in prison or on porale (sic) or probation. *All claims previously cognizable on a common law writ, in circumstances not covered by the terms of the Act, may still be litigated by means of the common law writ.* Merely because one is not incarcerated, on parole or probation does not *per se* preclude a collateral attack on his conviction.

2. In *Ditmore*, the Court did not reach the merits of the petitioner's collateral attack on his conviction because the Court found that the issue which the petitioner was attempting to raise had previously been litigated in his direct appeal.

*Id.*, 446 Pa. at 39, 285 A.2d at 467 (citations omitted) (emphasis added). The *Sheehan* Court also expanded the scope of a writ of *coram nobis* in Pennsylvania from being restricted to challenges on the validity of a judgment based on facts not previously before the court, to include matters of law. On the authority of the *Sheehan* decision, we conclude that appellant's petition is properly before this Court as a writ of *coram nobis.*

■ We now turn to the merits of appellant's petition. Appellant argues that his guilty plea colloquy was defective in that the court failed to fully apprise appellant of the permissible range or sentences, or, more specifically, that appellant's sentence on the state charges could be consecutive with his sentence on his federal convictions. Pa.R. Crim.P. 319(a) provides:

> Pleas shall be taken in open court. A defendant may plead not guilty, guilty, or, with the consent of the court, *nolo contendere.* The judge may refuse to accept a plea of guilty and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry shall appear on the record. If the defendant shall refuse to plead, the court shall enter a plea of not guilty on the defendant's behalf.

The mandatory nature of Rule 319 was clearly established in *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). Other cases indicated that six specific areas of inquiry must be explored, including whether the defendant is aware of the permissible range of sentences and fines for the offenses charged. *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977); *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976). In *Commonwealth v. Kulp*, 476 Pa. 358, 382 A.2d 1209, 1210, 1211 (1978), the Supreme Court noted that an assurance that the defendant fully comprehends the maximum punishment that might be imposed for his conduct "is obviously an integral part of the knowledge that should be possessed by one who is called upon to make the difficult decision whether to surrender his right to trial and to place

himself at the mercy of the sentencing court. No civilized society could tolerate the waiver of such basic rights from one who was unaware or misinformed as to such a critical fact."

The ABA Standards Relating to Pleas of Guilty (2nd ed 1980), Standard 14–1.4 in relevant part provides:

(a) The court should not accept a plea of guilty or nolo contendere from a defendant without first addressing the defendant personally in open court and determining that the defendant understands:

(i) the nature and elements of the offense to which the plea is offered;

(ii) the maximum possible sentence on the charge, *including that possibly from consecutive sentences*, and the mandatory minimum sentence, if any, on the charge, or of any special circumstances affecting probation or release from incarceration.

While there are no decisions in Pennsylvania which directly deal with the issue now before this Court, this issue has been raised in other jurisdictions. In particular, the case of *United States v. Myers*, 451 F.2d 402 (9th Cir. 1972) presents a fact situation which is the mirror image of that now before this Court. In *Myers*, the defendant was in state custody at the time he pleaded guilty to federal charges. The *Myers* Court was asked to construe the meaning of Rule 11, a rule which is comparable to Pa.R.Crim.Pro. 319, and which requires that a guilty plea not be accepted by the court unless "made voluntarily with understanding of the nature of the charge and the consequences of the plea." A particular federal statute made a consecutive sentence highly probable since the statute provided that a federal sentence shall not commence until the individual arrives at federal prison. Under these facts the *Myers* Court ruled that the defendant's plea was not voluntarily and understandingly made because the accused was not told of the possibility of consecutive sentences. The Court compared the defendant's situation with that of an accused who is statutorily ineligible under federal law for probation or

parole, a fact of which the accused must be informed before a guilty plea may be validly accepted. See e.g. *Berry v. United States*, 412 F.2d 189 (3rd Cir. 1969). The *Myers* Court therefore, reversed and remanded for a new trial.

We find that the reasoning in the *Myers* case can be applied to the instant appeal. In view of the Supreme Court's directive in *Kulp*, we conclude that appellant's guilty plea was not knowingly and understandingly entered since he was not fully apprised of the maximum punishment that was possible.

Reversed and remanded for a new trial.