665 A.2d 1185

**COMMONWEALTH of Pennsylvania**

v.

**William FIORE, Appellant.**

Superior Court of Pennsylvania.

Argued March 22, 1995.

Filed Sept. 20, 1995.

402

Harold Gondelman, Pittsburgh, for appellant.

John M. Popilock, Deputy Attorney General, Harrisburg, for Commonwealth, appellee.

Before ROWLEY, President Judge, and KELLY and HOFFMAN, JJ.

ROWLEY, President Judge:

Appellant, William Fiore, appeals from the trial court's order of August 18, 1994, denying his petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.* At the heart of this appeal is the fact that although appellant's employee and co-defendant, David Scarpone, has obtained from the courts of this Commonwealth a reversal of his conviction on the charge of operating a hazardous waste facility without a permit, appellant has failed to obtain the same relief. Such a result, appellant contends, deprives him of the due process of law and the equal protection of the laws and subjects him to cruel and unusual punishment.

Appellant maintains that, under the PCRA, we are empowered to grant the relief that he seeks in the form of a writ of coram nobis. After a careful review of the record and appropriate case law, however, we conclude that the relief sought by appellant is not available from this Court.

Appellant's argument rests on a complex procedural history. Appellant, owner of Municipal and Industrial Disposal Company (MIDC), a waste disposal facility, was charged with over 150 criminal and environmental law violations under the Solid Waste Management Act (SWMA), 35 P.S. § 6018.101 *et seq.,* and related statutes. Scarpone, appellant's employee and general manager, was also charged with various violations, including conspiracy, 18 Pa.C.S. § 903, and obstructing the administration of law or other governmental function, 18 Pa. C.S. § 5101. Both individuals were charged with violating 35 P.S. § 6018.401(a), operating a hazardous waste disposal facili-

ty without a permit,[1] the offense at issue in this appeal. This offense is a felony of the second degree pursuant to § 6018.606(f).[2]

In February 1986, appellant and Scarpone were jointly tried by a jury in a trial limited to charges against both defendants. Both were found guilty of violating § 6018.401(a), among other charges. In a non-jury trial in July, 1986, appellant was tried on those charges which did not involve Scarpone. This trial also resulted in appellant's conviction of, *inter alia*, violating § 6018.401(a). As a result of both trials, appellant was convicted on a total of sixty counts. Post-trial motions were filed and denied.

A single proceeding was held on April 10, 1987, for the imposition of sentence on appellant's convictions resulting from both trials. Although appellant had been convicted on sixty counts, the trial court sentenced him on only the following three:

1. **§ 6018.401. Management of hazardous waste**

(a) No person or municipality ... shall own or operate a hazardous waste storage, treatment or disposal facility unless such person or municipality has first obtained a permit for the storage, treatment and disposal of hazardous waste from the [D]epartment [of Environmental Resources]....

35 P.S. § 6018.401(a). The Commonwealth proceeded against Scarpone on a theory of accomplice liability under § 6018.610, which reads in pertinent part as follows:

It shall be unlawful for any person or municipality to:

. . . . .

(9) Cause or assist in the violation of any provision of this act, any rule or regulation of the department, any order of the department or any term or condition of any permit.

35 P.S. § 6018.610(9). *See Scarpone v. Commonwealth*, 141 Pa. Commw. 560, 596 A.2d 892 (1991), discussed *infra*.

2. **§ 6018.606 Criminal penalties**

. . . . .

(f) Any person who stores, transports, treats, or disposes of hazardous waste within the Commonwealth in violation of section 401, or in violation of any order of the department shall be guilty of a felony of the second degree and, upon conviction, shall be sentenced to pay a fine of not less than $2,500 but not more than $100,000 per day for each violation or to imprisonment for not less than two years but not more than ten years, or both.

35 P.S. § 6018.606(f) (footnote omitted).

**Count 1, Trial 1 (violating § 6018.401(a)):** two and one-half to five years imprisonment, ten years probation, and a fine of $100,000;

**Count 2, Trial 2 (violating § 6018.401(a)):** two and one-half to five years imprisonment and ten years probation, to run consecutive to the sentence imposed at Count 1, and a fine of $100,000; and

**Count 5, Trial 1 (perjury, 18 Pa.C.S. § 4902):** one to two years imprisonment and five years probation, to run consecutive to the previous sentences.

The trial court explained that "I do not mean to minimize the other counts. We feel that this penalty is severe and we therefore direct the Clerk to enter no further penalty on all remaining counts." Notes of Testimony at 69–70. Appellant filed a motion to modify sentence, which was denied. Appellant then appealed to this Court.

On September 28, 1987, this Court, acting *sua sponte* and citing the Commonwealth Court's exclusive jurisdiction over appeals involving criminal proceedings arising from violations of regulatory statutes administered by Commonwealth agencies, 42 Pa.C.S. § 762(a)(2)(ii), transferred appellant's appeal to the Commonwealth Court. Appellant petitioned the Commonwealth Court to return his appeal to this Court. The Commonwealth Court granted appellant's petition on February 29, 1988, noting that the facts and issues of the present appeal were closely related to another appeal taken by appellant to this Court.

In an unpublished memorandum decision filed May 12, 1989, this Court affirmed appellant's judgment of sentence. *Commonwealth v. Fiore*, 391 Pa.Super. 634, 563 A.2d 189 (1989) 485 Pittsburgh 1988. Noting that appellant had raised 22 issues on appeal, all of which had been addressed by the trial court in a comprehensive opinion, the Court affirmed on the trial court's opinion. Because appellant had failed to include in his brief a statement pursuant to Pa.R.A.P. 2119(f) and the Commonwealth had objected to its omission, the Court also

quashed the appeal insofar as it involved the alleged excessiveness of the sentence.

Appellant then petitioned the Supreme Court for allowance of appeal. In an order entered March 13, 1990, the Supreme Court denied the petition (No. 310 W.D. Alloc.Dkt.1989), thereby concluding appellant's direct appeal.[3]

Meanwhile, Scarpone appealed to this Court from his judgment of sentence. As was the case with appellant, this Court transferred the appeal *sua sponte* to the Commonwealth Court. Scarpone did not seek to have the appeal returned to this Court.

In a decision filed on August 5, 1991, more than a year after the conclusion of appellant's direct appeal, the Commonwealth Court reversed Scarpone's conviction on the charge of causing and assisting in the operation of a hazardous waste facility without a permit, as well as his conviction on the related charge of conspiracy. *Scarpone v. Commonwealth*, 141 Pa. Commw. 560, 596 A.2d 892 (1991). The Court held that the Department of Environmental Resources had issued a valid permit to MIDC, the waste facility in question. The Court reasoned that the alteration of a monitoring pipe, although a clear violation of the condition of the permit, did not result in the operation of a new facility that did not have a permit. Because MIDC had a valid permit, the Court held, Scarpone could not be convicted of causing and operating a waste disposal plant without a permit. The Court confirmed Scarpone's conviction on the charge of obstructing the administration of law or other governmental function.

Scarpone petitioned the Supreme Court for allowance of appeal in order to challenge the affirmance of his conviction on the obstruction charge. The Commonwealth, seeking to chal-

---

**3.** We note that in appellant's PCRA petition, to be discussed *infra*, counsel for appellant states that the petition for allowance of appeal in the present case "was filed with the Supreme Court of Pennsylvania to No. 507 W.D. Allocatur Docket, 1989, which petition was denied on August 1, 1991...." The docket number and date supplied by counsel are incorrect; counsel has confused the petition for allowance of appeal in this case with the petition for allowance of appeal filed by appellant (and denied) in a different appeal.

lenge the reversal of Scarpone's conviction on the permit charge, filed a cross-petition for allowance of appeal. The Supreme Court granted both petitions.

Although appellant's direct appeal was already concluded, he filed with the Supreme Court an application for extraordinary relief (No. 9 W.D.Misc.Dkt.1992), asking the Court to take jurisdiction of his case pursuant to the Court's King's Bench powers, 42 Pa.C.S. § 726, and to consolidate it with Scarpone's appeal "so that a uniform interpretation in the Commonwealth of the Solid Waste Management Act and the penal provisions thereunder will be obtained." Application for Extraordinary Relief at 5. The Court denied the application on March 25, 1992.

In an opinion filed on December 15, 1993, the Supreme Court affirmed the Commonwealth Court's decision in Scarpone's case. *Commonwealth v. Scarpone*, 535 Pa. 273, 634 A.2d 1109 (1993). The Court explained the situation as follows:

We granted review in this case because of a conflict between the intermediate appellate courts in deciding the permit issue. Scarpone and his co-defendant Fiore were both charged with and found guilty of operating without a permit.

Scarpone took his appeal to the Commonwealth Court and that court found it impossible to conclude that the alteration of the pipe resulted in the operation of a new facility for which no permit had been issued. Although the facility may have acted in breach of the permit it held, the court would not hold that this was tantamount to acting without any permit.

Fiore took his appeal to the Superior Court and raised the issue by way of a sufficiency of the evidence argument. The Superior Court found the evidence sufficient and issued an unpublished memorandum opinion upholding his conviction of operating a hazardous waste facility without a permit. The two courts are clearly in conflict and this leaves

the Attorney General's office ill-advised on how it should proceed in such situations.

We find that the Commonwealth did not make out the crime of operating a waste disposal facility without a permit against Mr. Scarpone under the statute. Simply put, Mr. Scarpone did have a permit. A more appropriate charge may have been brought under alternative provisions of the statute.... [T]he SWMA has specific provisions providing a penalty for violations of the conditions of a permit. Under such circumstances, the Commonwealth *must* adhere to the legislative scheme in pursuing criminal charges. The alteration of the monitoring pipe here was execrable and constituted a clear violation of the conditions of the permit. But to conclude that the alteration constituted the operation of a new facility *without a permit* is a bald fiction we cannot endorse. Penal provisions of a statute must be strictly construed under 1 Pa.C.S. § 1928(b)(1).

We agree with the Commonwealth Court that the statutory language here cannot be stretched to include criminal activities which clearly fall under another statutory section or subsection. The Commonwealth Court was right in reversing Mr. Scarpone's conviction of operating without a permit when the facility clearly had one.

*Id.* at 278–29, 634 A.2d at 1112 (emphasis in original). The Supreme Court affirmed Scarpone's conviction on the charge of obstructing the administration of law.

On January 27, 1993, appellant filed an "emergency application for extraordinary relief" (No. 7 W.D.Misc.Dkt.1994) with the Supreme Court. Again he urged the Court to utilize its King's Bench powers "to correct the anomalous situation of [appellant's] employee being discharged of criminal conduct under the identical facts and circumstances causing [appellant] to be imprisoned." Emergency Application for Extraordinary Relief at 9–10. The Supreme Court denied appellant's emergency application on March 22, 1994.

Appellant then filed the petition for post-conviction relief

which has led to the present appeal.[4] In his PCRA petition, appellant urged the trial court to vacate the sentences imposed on the charges of operating a hazardous waste facility without a permit because "[w]hat [appellant] is charged with having done is not a crime as decided by the Supreme Court of Pennsylvania on these very facts." *Id.* at 6. In an order entered August 18, 1994, the trial court denied appellant's petition for post-conviction relief. This timely appeal followed.

We turn first to appellant's contention that the common law remedy of a writ of coram nobis continues to be available under the PCRA and that he is entitled to that remedy. The term "coram nobis" is defined as "in our presence" or "before us," and "[t]he essence of coram nobis is that it is addressed to the very court which renders the judgment in which injustice is alleged to have been done, in contrast to appeals or review directed to another court...." Black's Law Dictionary 304–05 (5th ed. 1979). In 1945 this Court explained the nature of the writ as follows:

> The writ of error coram nobis is an ancient common law writ, the purpose of which is to bring before a court a judgment previously rendered by it for review or modification, on account of *some error of fact and not of law* affecting the validity and regularity of the proceedings, and which was not brought into the issue at the trial thereof.

*Commonwealth v. Morrison,* 158 Pa.Super. 311, 313, 44 A.2d 850, 851 (1945) (citation omitted; emphasis added). This Court suggested that the writ would lie, for example, where the error concerned the status of a party, such as an infant, or where an accused was forced to plead guilty owing to a well-founded fear of mob violence. *Id.* The Supreme Court has

4. The trial court states that this is appellant's second collateral attack on his conviction, the first having been a petition for writ of habeas corpus filed on appellant's behalf by Allen Brunwasser, Esq., on July 17, 1989, and denied by the trial court on October 24, 1989. This petition was essentially a challenge to the revocation of appellant's bond. Even if we were to apply to the present request for post-conviction relief the heightened standard set forth in *Commonwealth v. Lawson,* 519 Pa. 504, 549 A.2d 107 (1988), for a second or any subsequent such petition, the result in this case would be unchanged.

emphasized that the writ of error coram nobis "is a procedural tool whose 'purpose . . . is to correct errors of fact only. . . .' " *Commonwealth v. Mangini,* 478 Pa. 147, 163, 386 A.2d 482, 490 (1978), quoting *Commonwealth v. Orsino,* 197 Pa.Super. 306, 313–14, 178 A.2d 843, 846 (1962). Moreover,

> [a] review of the cases in which the writ of coram nobis has been successfully invoked shows that the true rule governing the use of the writ is that one which is aptly expressed in section 94 of Freeman on Judgments, quoted in *Sanders v. State,* 85 Ind. 318, 44 Am.Rep. 29, 35, as follows: "The writ of error coram nobis *is not intended to authorize any court to review and revise its opinions;* but only to enable it to recall some adjudication, made while some fact existed which if before the court would have prevented the rendition of the judgment, and which without any fault or negligence of the party was not presented to the court."

*Commonwealth v. Harris,* 351 Pa. 325, 329–30, 41 A.2d 688, 691 (1945) (emphasis added). The writ of error coram nobis is generally regarded as an extraordinary remedy. *Commonwealth v. Mangini, supra.* It is not issued, for example, simply because a witness later recants or changes his or her testimony, for "there would be no finality to any conviction of crime if verdicts and judgments could be thus easily nullified." *Commonwealth v. Mathews,* 356 Pa. 100, 102, 51 A.2d 609, 610 (1947), *cited in McKnight v. Commonwealth, Department of Transportation,* 121 Pa.Commw. 28, 549 A.2d 1356, 1358–59 (1988).

The case law just cited suggests that even if the remedy of coram nobis were available to appellant in the present procedural context, he would nevertheless not qualify for it because the issue that he raises is not a factual one. However, in support of his claim that he is entitled, via his PCRA petition, to the remedy of coram nobis, appellant directs us to the opinions of the Pennsylvania Supreme Court in *Commonwealth v. Sheehan,* 446 Pa. 35, 285 A.2d 465 (1971), and *Commonwealth v. Conner,* 462 Pa. 282, 341 A.2d 81 (1975).

In *Sheehan,* the appellant, while not represented by counsel, pled guilty to a charge of driving while intoxicated and paid a

fine of $200. When he was charged with a second such offense five years later and learned that conviction for a second offense would merit a term of imprisonment, he petitioned for relief pursuant to the then-effective Post Conviction Hearing Act (PCHA), predecessor to the PCRA, asserting that his first conviction was invalid because his constitutional right to counsel had been denied. The trial court denied the petition, noting that appellant failed to meet the PCHA's requirement that, to be eligible for relief, a petitioner must be incarcerated or on probation or parole. This Court affirmed.

On appeal to the Supreme Court, appellant argued that if his claim was not cognizable under the PCHA, his petition should be treated as one for a writ of coram nobis or habeas corpus. The Supreme Court observed that

[t]he intent of the [Post Conviction Hearing] Act ... was not to abolish the common law remedies of habeas corpus or coram nobis, but rather to promulgate an exclusive, well-defined procedure for the presentation of those grievances set forth in the Act by an aggrieved person who is under the duress of punishment, whether in prison or on parole or probation. All claims previously cognizable on a common law writ, in circumstances not covered by the terms of the Act, may still be litigated by means of the common law writ.

*Sheehan,* 446 Pa. at 39, 285 A.2d at 467 (citations and footnote omitted). After noting the limited scope of coram nobis, the Court took guidance from the Supreme Court of the United States:

[A]fter noting that courts should act by whatever procedural channels appear necessary to do justice when the record makes plain a right to relief, the United States Supreme Court in *United States v. Morgan,* 346 U.S. 502, 505, [74 S.Ct. 247, 249], 98 L.Ed. 248, 253 (1954)[,] held that, on an allegation of the denial of right to counsel, coram nobis would lie to challenge a conviction, the sentence of which had been fully satisfied. The Court laid particular emphasis on a quotation from 2 Tidd's Practice (4th Am.Ed.) 1136, 1137, which stated that coram nobis is available to cure errors of fact or process. See [Judge Hoffman's dissenting

opinion in *Commonwealth v. Sheehan,* 216 Pa.Super. 26, 260 A.2d 496 (1969),] and cases cited therein. Likewise, the Court in *Morgan* noted that coram nobis as applied in American jurisdictions had not been confined strictly to matters of fact.

*Id.* at 40, 285 A.2d at 468. Our Supreme Court concluded that appellant's petition should be treated as a petition for a writ of coram nobis and remanded the case to the trial court for a hearing to determine whether appellant had knowingly waived his right to counsel.

The appellant in *Conner* sought relief in the form of a writ of coram nobis after his direct appeal from a judgment of sentence for voluntary manslaughter proved unsuccessful. The trial court denied the relief sought. On appeal, the Supreme Court acknowledged that appellant should have sought relief under the PCHA. Nevertheless, because the trial court had considered the merits of appellant's claims, the Supreme Court decided in the interest of judicial economy to treat the claims as having been raised under the PCHA. In doing so, the Court relied upon its earlier opinion in *Sheehan* and upon the reasoning of the United States Supreme Court in *Morgan, supra,* that "courts should act by whatever procedural channels appear necessary to do justice when the record makes plain a right to relief." *Conner,* 462 Pa. at 286, 341 A.2d at 83.

This Court subsequently interpreted the Supreme Court's decision in *Sheehan* as having "expanded the scope of a writ of coram nobis in Pennsylvania from being restricted to challenges on the validity of a judgment based on facts not previously before the court, to include matters of law." *Commonwealth v. Fay,* 294 Pa.Super. 332, 336, 439 A.2d 1227, 1229 (1982). *See also Commonwealth v. Bucci,* 283 Pa.Super. 125, 423 A.2d 747 (1980) (PCHA did not abrogate common law writs which cover situations not covered by PCHA); *Commonwealth v. Mervin,* 263 Pa.Super. 498, 398 A.2d 687 (1979) (writ of error coram nobis still exists, but has been supplanted by PCHA except in rarest situation).

Appellant is not proceeding under the PCHA, however, but under its successor statute, the PCRA, which went into effect April 13, 1988. This Court *en banc* has observed that

[t]he PCRA ... is a complete amendment to the prior post conviction relief statute[,] the [PCHA]. A review of the modifications and amendments to the PCHA shows that almost the entire statutory language of the PCHA was stricken and replaced by new language in the PCRA.

*Commonwealth v. Hayes,* 408 Pa.Super. 68, 72, 596 A.2d 195, 197 (1991) (*en banc* ), *appeal denied,* 529 Pa. 646, 602 A.2d 856 (1992). Accordingly, we are required to decide whether coram nobis survives as an alternative remedy outside of the PCRA.

We note, first, a difference in the wording of the sections setting forth the scope of the former and the present statutes. The drafters of the PCHA described its scope as follows:

This subchapter establishes *a* post conviction procedure for providing relief from convictions obtained and sentences imposed without due process of law. The procedure established in this subchapter shall encompass all common law and statutory procedures for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis. However, nothing in this subchapter limits the availability of remedies in the trial court or on direct appeal.

42 Pa.C.S. § 9542 (repealed) (emphasis added). The drafters of the PCRA chose the following language:

This subchapter provides for an action by which persons convicted of crimes they did not commit or serving unlawful sentences may obtain collateral relief and for an action by which persons can raise claims which are properly a basis for Federal habeas corpus relief. The action established in this subchapter shall be *the sole* means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from

the judgment of sentence, nor is this subchapter intended to provide a means for raising issues waived in prior proceedings.

42 Pa.C.S. § 9542 (emphasis added).

In *Commonwealth v. Hayes, supra,* this Court *en banc* addressed the significance of the change in wording. In that case, as in *Sheehan,* the defendant filed a petition for post-conviction relief in order to challenge a conviction, the sentence for which had expired, but which had led to a collateral consequence in the form of an increased sentence for a later offense. The eligibility provision of the PCHA had required that a petitioner be "incarcerated in this Commonwealth under a sentence of death or imprisonment or on parole or probation." 42 Pa.C.S. § 9543(2). Because the appellant was proceeding under the PCRA, however, he was required to be "currently serving a sentence of imprisonment, probation or parole for the crime...." 42 Pa.C.S. § 9543(a)(1)(i).

In analyzing this change, the Court first applied two principles of statutory interpretation: 1) general and plain words must be given their common and accepted meaning; and 2) it must be assumed that the drafters of a statute intended every word of it to have effect. The conclusion reached was that "the language changes in the PCRA were deliberately made to confront and alter the collateral criminal consequences rule" and that to interject that rule into the PCRA would mean ignoring "the legislative intent and the plain meaning of the word changes made in the PCRA." *Id.* at 76, 596 A.2d at 199 (footnote omitted).

As further support for its conclusion, the Court pointed to the legislature's decision to declare a petition pursuant to the PCRA "the *sole* means of obtaining collateral relief...." 42 Pa.C.S. § 9542 (emphasis added). "This statutory language clearly evidences a legislative intent to change the prior decisional law and restrict the scope of collateral post conviction challenges." *Id.* at 77, 596 A.2d at 200.

Although this Court *en banc* was not directly presented in *Hayes* with the question whether the common law writ of

coram nobis survives as a post-conviction remedy outside the PCRA, the conclusion that the writ does not survive follows directly from the Court's interpretation of the drafters' intent. If we were to allow appellant to petition for a writ of coram nobis without satisfying the eligibility requirements of the PCRA, we will have created a *second* means of obtaining collateral relief, thereby contravening the legislative intent that the PCRA be the *sole* means of obtaining such relief. Accordingly, we conclude that appellant is not eligible for post-conviction relief in any form unless he meets the eligibility requirements set forth in the PCRA.

One such requirement is the obligation to plead and prove by a preponderance of the evidence that the allegation of error has not been previously litigated. 42 Pa.C.S. § 9543(a)(3). Section 9544 explains in pertinent part that "an issue has been previously litigated if ... the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue...." 42 Pa.C.S. § 9544(a)(2).

We agree with the trial court that appellant has failed to meet this requirement. As noted earlier, this Court disposed of the twenty-two issues raised in appellant's direct appeal by affirming on the trial court's opinion. The trial court addressed the present issue in the following terms:

The defendant alleges that the evidence was insufficient to prove that he operated a hazardous waste disposal facility without a permit from the [DER] for such disposal facility.

In essence, the defendant contends that he possessed a permit issued by the DER for his waste disposal facility during the time that he altered the groundwater monitoring system ... and, as such, the existence of that permit constitutes an absolute defense to the charges. We find the defendant's contention unpersuasive.

. . . . .

[T]he defendant's alterations of the 810 pipe represented such a significant departure from the terms of the existing permit that the operation of the hazardous waste facility was "un-permitted" after the alterations were undertaken

by the defendant. Contrary to the defendant's contention, he did not possess all necessary permits; specifically, he did not possess a permit which allowed the disposal of hazardous waste after the monitoring system was altered. Therefore, we reject the defendant's contention as incorrect.

Trial Court Opinion, 1/19/88, at 44–48. The Supreme Court declined to allow appellant to appeal from this Court's decision. Appellant now asks this Court to grant him, in a post-conviction proceeding, the relief that was denied him on direct appeal. It is settled law that an issue litigated on direct appeal cannot be litigated again in a post-conviction proceeding. *Commonwealth v. Szuchon,* 534 Pa. 483, 486, 633 A.2d 1098, 1099 (1993). Accordingly, appellant is not entitled to relief under the PCRA.

In reaching this result, we have not overlooked the uniqueness of appellant's situation. Appellant was convicted of operating a waste management facility without a permit, and his conviction was affirmed. His general manager, David Scarpone, was convicted of the same offense, and his conviction was reversed because, the appellate courts concluded, he had a permit. The permit in question was the same, however; it was appellant's as well as Scarpone's. Unsurprisingly, appellant views the situation as unjust.

Nevertheless, the crucial fact is that appellant's direct appeal was no longer pending when the Supreme Court made the ruling which appellant now seeks to have applied to his case. In *Commonwealth v. Gillespie,* 512 Pa. 349, 516 A.2d 1180 (1986), our Supreme Court considered "whether full retroactivity of a case encompasses a collateral attack on the conviction." *Id.* at 354, 516 A.2d at 1181. The Court held that

a new rule of law to which we give full retroactive effect, will not be applied to any case on collateral review unless that decision was handed down during the pendency of an appellant's direct appeal and the issue was properly preserved there, or . . . is non-waivable.

*Id.* at 355, 516 A.2d at 1183.[5] *Accord Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994); *Commonwealth v. Galloway,* 433 Pa.Super. 222, 640 A.2d 454 (1994), *appeal denied,* 538 Pa. 666, 649 A.2d 668 (1994); *Commonwealth v. Riggins,* 374 Pa.Super. 243, 542 A.2d 1004 (1988), *appeal denied,* 522 Pa. 583, 559 A.2d 527 (1989); *Commonwealth v. Carr,* 370 Pa.Super. 1, 535 A.2d 1120 (1987), *appeal denied,* 518 Pa. 648, 544 A.2d 960 (1988). In *Galloway,* for example, this Court held that a defendant whose conviction became final when the Supreme Court affirmed his judgment of sentence on September 24, 1981, was not entitled to post-conviction relief based on a ruling set forth in an opinion filed by the Supreme Court on October 19, 1981, barely a month later. We conclude, therefore, that there is no support in the case law of this Commonwealth for the result sought by appellant in this case.

Finally, we note that appellant has presented to the Supreme Court, via two petitions for extraordinary relief, the same issue that he raises here, and that the Supreme Court has denied both petitions without explanation. On this point, the trial court offered the following observation:

> This court cannot divine the reason why the Supreme Court has consistently and repeatedly denied extraordinary relief to [appellant] despite its decision in *Scarpone.* If it is because there must be some finality to these matters, and [because] justice does not require extraordinary relief, then this court concurs.

Trial Court Opinion, 2/17/95, at 8. To this we add the observation that 42 Pa.C.S. § 726, which confers extraordinary jurisdiction on the Supreme Court, does so only "in any matter *pending* before any court ... of this Commonwealth ..." (emphasis added).[6]

---

**5.** Although the Supreme Court's opinion was not joined in its entirety by a majority of the panel, a majority joined the Court's ruling on the question of retroactivity.

**6.** Section 726 reads in its entirety as follows:

Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter

■ Most importantly, we are cognizant that "[t]he formal purpose of the Superior Court is to maintain and effectuate the decisional law of [the Supreme] Court as faithfully as possible." *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985). Doing so in this case requires that we affirm the trial court's order denying appellant's petition for post-conviction relief.

Order affirmed.

HOFFMAN, J., files a concurring statement.

HOFFMAN, Judge, concurring:

As appellant's direct appeal was final when the Supreme Court decided *Commonwealth v. Scarpone,* 535 Pa. 273, 634 A.2d 1109 (1993), and as his claim had already been previously litigated, I agree with my distinguished colleagues that appellant is not eligible for relief under the PCRA. *See* 42 Pa.C.S. § 9543(a)(3); Pa.C.S. § 9544; *Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38 (1994) (issues previously litigated may not be relitigated in PCRA action); *Commonwealth v. Gillespie,* 512 Pa. 349, 355, 516 A.2d 1180, 1183 (1986) (new rule of law will not be applied retroactively after appellant's direct appeal is final).

However, I write separately to emphasize that there are circumstances where a departure from the PCRA's stringent eligibility requirements is appropriate, such as where there are extraordinary circumstances or a miscarriage of justice. *See Commonwealth v. Szuchon,* 534 Pa. 483, 633 A.2d 1098 (1993) (where a strong prima facie showing is offered to demonstrate that a miscarriage of justice occurred, a subsequent petition for post-conviction relief will be entertained); *Commonwealth v. Lyons,* 390 Pa.Super. 464, 568 A.2d 1266 (1989) (extraordinary circumstances may overcome petitioner's

pending before any court or district justice of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.
42 Pa.C.S. § 726.

failure to raise issue below), *appeal denied,* 525 Pa. 663, 583 A.2d 792 (1990).

In the instant case, the evidence at trial clearly demonstrated that appellant deliberately altered the groundwater monitoring system, wrongfully discharged hazardous waste into an unnamed tributary of the Youghiogheny River, and lied under oath to the Commonwealth Court. Although appellant is serving a sentence for a conviction based upon evidence which would no longer support a conviction in Pennsylvania, I believe appellant's conviction was not a miscarriage of justice or an extraordinary circumstance warranting a departure from the provisions of the PCRA.

Accordingly, I concur.